**PANITZ et al. v. DISTRICT OF COLUMBIA.**

No. 7294.

United States Court of Appeals for the District of Columbia.

Decided April 22, 1940.

Morris Rosenberg, of Baltimore, Md., and Fred W. Weitzel and Norman J. Morrison, both of Washington, D. C., for petitioners.

Elwood H. Seal, Corporation Counsel, Vernon E. West, Principal Asst. Corporation Counsel, and Glenn Simmon, Asst. Corporation Counsel, all of Washington, D. C., for respondent.

Before EDGERTON, VINSON, and RUTLEDGE, Associate Justices.

VINSON, Associate Justice.

This is a petition to review a decision of the Board of Tax Appeals for the District of Columbia (hereinafter referred to as the Board) dismissing, for want of jurisdiction, the petitioners' claim for tax refund.

The relevant features of the case are as follows: Under Title VI of the District

of Columbia Revenue Act of 1937 [1] (referred to herein as the Act), those engaging in business activity in the District for the fiscal year 1937–1938 were required to pay a tax on that privilege, measured by their gross receipts for the preceding calendar year. As an enforcement measure, provision was made for the issuance of licenses essential to legal transaction of business in the District. This license might be revoked, after hearing, by the Commissioners (or their representative) for failure to pay the tax when due. [2] Engaging in business in the District of Columbia after revocation of the license was punishable by a fine of $1,000 per day. [3]

The petitioners are engaged in the manufacturing and sale of clothing with their principal place of business in Baltimore, Maryland. Through traveling salesmen they sell to retailers in the District of Columbia, and in the calendar year 1936 these sales amounted to $172,761.79. The petitioners were required by the terms of Title VI of the Act to secure a license thereunder, which they did. They also filed a return reporting the amount of their sales. Thereupon the assessor informed them that he had assessed against them a tax, on the basis of these sales, of $683.06 plus a penalty of $20.50 or a total of $703.56. The petitioners did not pay the same, and on April 22, 1938 they received a letter from the assessor in the nature of a rule to show cause, at a hearing to be held before him April 29, 1938, why their license to do business should not be revoked. On April 28, 1938, the petitioners mailed the assessor a check for $703.56, payable to Collector of Taxes, together with a letter stating that they made the payment under protest to avoid the revocation of their license.

Section 6 of Title IX of the Act, as amended May 16, 1938, provides as follows: [4] "Sec. 6. Any taxpayer who *shall have paid* within three years immediately preceding the approval of this Act *any tax to the District involuntarily*, and under circumstances which according to law would entitle such taxpayer to the right to sue at law for the recovery of such tax, may within ninety days from the approval of this Act, appeal from the imposition of such tax [to the Board of Tax Appeals] * * *."

It is clear from the italicized portions that this section adopts the common law rule governing suits to recover taxes paid —the taxpayer cannot challenge the validity of the tax unless he paid the same involuntarily. [5] Pursuant to this statute, and in due time, the petitioners filed a petition for refund with the Board alleging that Title VI of the Act was unconstitutional.

The Board dismissed the petition for want of jurisdiction on the ground that the petitioners had not paid the tax involuntarily and hence were not entitled under § 6, Title IX of the Act, to contest the validity of the tax or any part thereof. In its opinion the Board took the position that, since the petitioners paid the tax without proceeding to the hearing the assessor would have accorded them before revoking their license, they failed to exhaust their administrative remedy and hence did not pay the tax involuntarily within the meaning of the statute.

In General Electric Supply Corp. v. District of Columbia [6] and Colgate Palmolive Peet Company v. District of Columbia, [7] the Board disposed of two very similar cases in the same manner. Appeals to this Court were taken and in each case the petitioners briefed and argued both jurisdictional (involuntary payment of the tax) and substantive questions. We took the view [8] that since the substantive question argued, the constitutionality of Title VI as applied to sales in interstate commerce, had been decided adversely to the taxpayer in Neild and Sauerhoff v.

---

1 50 Stat. 673, 688. As modified by subsequent amendments, the Act appears in D.C.Code, Supp. V, Title 20, § 970 et seq.

2 50 Stat. 689.

3 50 Stat. 691.

4 52 Stat. 374, D.C.Code Supp. V, T. 20, § 977.

5 Union P. Railroad Company v. Commissioners, 98 U.S. 541, 25 L.Ed. 196; Chesebrough v. United States, 192 U. S. 253, 24 S.Ct. 262, 48 L.Ed. 432;

Blanks v. Hazen, 66 App.D.C. 118, 85 F.2d 284. Notes 48 A.L.R. 1381; 74 A. L.R. 1301.

6 D.C. B.T.A., Docket No. 8, Opinion No. 46 (filed Nov. 1, 1938).

7 D.C. B.T.A., Docket No. 31, Opinion No. 48 (filed Nov. 2, 1938).

8 General Electric Supply Co. v. District of Columbia, —— App.D.C. ——, 110 F.2d 261; Colgate Palmolive Peet Co. v. District of Columbia, —— App.D.C. ——, 110 F.2d 264.

District of Columbia, —— App.D.C. ——, 110 F.2d 246, the jurisdictional question need not be considered. In the instant case, however, the petitioners have neither briefed nor argued substantive questions. Hence, we are not warranted in assuming that their objection to the tax is limited to that disposed of by our previous decisions.[9] On this appeal we must, therefore, determine whether the Board erred in dismissing the petition for want of jurisdiction on the ground that the petitioners had not paid the tax involuntarily.

We come then to the question—Was the payment of the tax involuntary? Decision on that issue requires consideration of certain of the facts previously related. It will be recalled that the petitioners held a business license under Title VI of the Act. Forfeiture of that license would have forfeited their right to trade in the District—insuring this result was provision by the Act that one engaging in business without a license was liable to a fine of $1,000 a day. The petitioners delayed payment of their tax until they were notified by the assessor to appear at a hearing before him and show cause why their license to do business in the District should not be revoked for nonpayment of the tax. When they remitted the amount of the tax the day before the scheduled hearing, it was accompanied with a written statement that the tax was paid to prevent revocation of their license.

 It is clear from decisions of the Supreme Court that payment of a tax to avoid loss of a license to do business is an involuntary payment within the meaning of the rule governing tax recovery.[10] It follows that whether the petitioners' tax payment was involuntary depends on whether their statement that it was necessary "to avoid revocation of our license" accurately reflected their situation. The Board was of the opinion that it did not on the theory that it could not be established that payment was necessary to save their license until after the assessor had heard and ruled on their objection to the tax.

 It is, of course, elementary that one is required in tax procedure to exhaust the administrative remedies.[11] It is equally well settled, however, that one need not appear before an administrative agency not in a position to consider the particular objection made.[12] The petitioners' challenge of the instant tax was based on constitutional grounds. If the assessor had authority to decide issues of that character, the petitioners' failure to appear before him at the scheduled hearing is fatal to their contention that they paid the tax involuntarily. Conversely, if the assessor was not authorized to relieve from the tax on constitutional grounds, their payment of the same was necessary to save their license and therefore involuntary.

 Decision as to the authority of the assessor requires consideration of two questions. The first—Did the assessor, as an administrative official, have inherent power to rule on constitutional objections to the tax? It has been said that the necessities of our system require the judiciary to determine the constitutionality of Acts of the legislature.[13] There can be little doubt that it represents the highest exercise of judicial power, and one that even the judiciary is reluctant to exercise.[14]

[9] Ibid; Neild and Sauerhoff v. District of Columbia, supra.

[10] Atchison, Topeka & Santa Fe Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436, Ann.Cas.1913C, 1050; Stratton v. St. Louis Southwestern Ry. Co., 284 U.S. 530, 52 S.Ct. 222, 76 L. Ed. 465; Swift Co. v. United States, 111 U.S. 22, 4 S.Ct. 244, 28 L.Ed. 341. See Gaar, Scott & Co. v. Shannon, 223 U.S. 468, 32 S.Ct. 236, 56 L.Ed. 510. See also Notes 64 A.L.R. 9, 121, 126, 127; 84 A.L.R. 297.

[11] First National Bank v. Weld County, 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784.

[12] Montana Nat. Bank v. Yellowstone County, 276 U.S. 499, 505, 48 S.Ct. 331, 72 L.Ed. 673; Munn v. Des Moines National Bank, 8 Cir., 18 F.2d 269, 272, 273; Fosgate Co. v. Kirkland, D.C., 19 F.Supp. 152, 157. Cf. Smith v. Cahoon, 283 U.S. 553, 562, 51 S.Ct. 582, 75 L.Ed. 1264.

[13] United States v. Butler, 297 U.S. 1, 62, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L. R. 914; Adkins v. Children's Hospital, 261 U.S. 525, 544, 43 S.Ct. 394, 67 L. Ed. 785, 24 A.L.R. 1238, overruled on other grounds; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L. Ed. 703, 108 A.L.R. 1330.

[14] United States v. Butler, 297 U.S. 1, 67, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L. R. 914; Calder v. Bull, 3 Dall., U.S., 386, 1 L.Ed. 648; Nicol v. Ames, 173 U.S. 509, 19 S.Ct. 522, 43 L.Ed. 786.

Interruption of the machinery of government necessarily attendant on this function not only cautions the judiciary but argues as well against its exercise by other agencies. It is this consideration for the orderly, efficient functioning of the processes of government which makes it impossible to recognize in administrative officers any inherent power to nullify legislative enactments because of personal belief that they contravene the constitution.[15] Thus it is held that ministerial officers cannot question the constitutionality of the statute under which they operate.[16] Likewise, it has been held that an administrative agency invested with discretion has no jurisdiction to entertain constitutional questions where no provision has been made therefor.[17] In respect to taxation it is frequently stated that one need not pursue his administrative remedy where the tax is void.[18] Here again is apparent a reluctance to invest non-judicial agencies with jurisdiction to rule on the validity of statutes.

From the above we think it clear that the assessor had no inherent authority to consider constitutional objection to the tax.

■ We come then to the second and final question—Did the Act, or regulations adopted pursuant thereto, purport to vest the assessor with that authority? Section 2 of Title VI, D.C.Code Supp. V, T. 20, § 970a, provided that "The Commissioners may, after hearing, revoke any license issued hereunder for failure of the licensee * * * to pay any installment of tax when due". Under § 1 the Commissioners were authorized to appoint a representative to act for them. Rule 24(e) of the Regulations for the Administration and Enforcement of Title VI, promulgated by the Commissioners on September 8, 1937, provides as follows: "Hearings for revocation of license for failure * * * to pay the tax provided [by Title VI] * * * shall be held by the Assessor, as representative of the Commissioners, *who shall after the consideration of the facts,* revoke the license *if he shall conclude from the facts* that the licensee has been guilty of any of said violations [non-payment of the tax]." (Italics supplied.) We think it clear that neither § 2 nor Rule 24(e) authorized the assessor to relieve against forfeiture of a license on the ground that the Act was unconstitutional.

■ Since the assessor had no inherent authority to exempt from the tax on constitutional grounds, and no such power was given by the Act or rules adopted thereunder, he was not in a position to hear the petitioners' objections to the tax assessed against them. Payment of the tax was therefore necessary to prevent revocation of their license and hence involuntary.

The order of the Board dismissing the petitioners' claim for refund was erroneous, and the cause must be reversed and remanded for decision on the merits of their claim.

Reversed and remanded.

[15] Cf. Op. Atty. Gen. to the President, March 26, 1937. Reprinted in Selected Papers of Homer Cummings, 1939, p. 273.

[16] U. S. ex rel. Schumacher v. Marble, 3 Mackey (14 D.C.) 32, 49; State v. Board of Equalizers, 84 Fla. 592, 94 So. 681, 30 A.L.R. 362; State v. Becker, 328 Mo. 541, 41 S.W.2d 188; 38 Op.Atty. Gen. 252; 11 Am.Jur. 713.

It may be that the rule *is* otherwise where execution of an unconstitutional statute would subject the acting official to personal liability. That sort of case is not now before us, however.

[17] See Fosgate Co. v. Kirkland, supra, n. 12; Bickett v. State Tax Commission, 177 N.C. 433, 99 S.E. 415; State v. Board of Equalizers, supra n. 16; Payne & Butler v. Providence Gas Co., 31 R.I. 295, 77 A. 145, 153, Ann.Cas.1912B, 65. Cf. Independent Life Ins. Co. of America v. Comm., 17 B.T.A. 757, 765 (Board of Tax Appeals will hold an Act of Congress unconstitutional—three members dissenting), affirmed without decision on this point, 6 Cir., 67 F.2d 470; reversed 292 U.S. 371, 54 S.Ct. 758, 78 L.Ed. 1311; Protest of Downing, 164 Okl. 181, 23 P.2d 173 (court of tax review authorized to determine the legality of taxes has jurisdiction over constitutional questions).

[18] Tumulty v. District of Columbia, 69 App.D.C. 390, 102 F.2d 254; Powder River Cattle Co. v. Board of Com'rs, C.C., 45 F. 323, 327; Second Nat. Bank of City of New York v. City of New York, 213 N.Y. 457, 107 N.E. 1039.