Russell R. SIMPSON

v.

R. Page LAPRADE, J. H. Austin, R. G. Johnson, and as such Constituting the Local Review Committee Under the Agricultural Adjustment Act.

Civ. A. No. 65–C–73–R.

United States District Court
W. D. Virginia,
Danville Division.

Dec. 23, 1965.

W. Carrington Thompson, Chatham, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendants.

DALTON, Chief Judge.

This action was instituted by plaintiff to obtain judicial review of a determination of the acreage-poundage marketing quota for flue-cured tobacco established for his farm for the 1965 crop year. The marketing quota was established under the provisions of the Agricultural Ad-

justment Act, 7 U.S.C. § 1281 et seq. (1938), as amended, especially by public Law 89–12 (79 Stat. 66), approved on April 16, 1965, and the regulations issued thereunder. The quotas are established in the first instance at the county level by Agricultural Stabilization and Conservation Service County Committees, which apply the provisions of the statute and the regulations of the Department of Agriculture to each individual farmer's situation. If the farmer is dissatisfied with the determination of the county committee, he may obtain a *de novo* review of the allotment by a review committee composed of three farmers from the same or nearby counties who are appointed by the Secretary of Agriculture. 7 U.S.C. § 1363 (1938), as amended in 1951. If, after the decision of the review committee, the complainant is still not satisfied, he may then institute proceedings for judicial review of the review committee's determination. 7 U.S.C. § 1365 (1938), as amended in 1960.

In this case, the Pittsylvania county committee established an acreage allotment of 11.27 acres and a marketing quota of 17,412 pounds of flue-cured tobacco for plaintiff's farm for the 1965 crop year and duly issued notices thereof on April 30, 1965. Through error, a second notice of marketing quota was mailed to plaintiff on May 3, 1965, showing an acreage allotment of 11.27 acres and a marketing quota of 22,608 pounds. It seems that because of the destruction of some of Mr. Simpson's crop, the committee made adjustments in the yield for lease and transfer purposes, and was mistaken in believing that the regulations permitted it to base the plaintiff's quota on the adjusted figure. When this mistake was discovered, a corrected notice of quota was issued to plaintiff on June 25, 1965, showing the same figures as the first notice. On June 25, 1965, plaintiff applied for a review of the corrected quota by the defendant review committee. As the basis for his appeal, plaintiff alleged that the county committee failed to take into account hail damage to his 1959,

1960, 1961 and 1962 crops of tobacco in establishing the farm yield for his farm for the 1965 crop of flue-cured tobacco. It was contended that much of his crop in those years was destroyed before harvest, but that the part destroyed should be counted when determining the number of pounds of tobacco produced by his farm for those years. Plaintiff's theory is that this would more accurately reflect the production capacity of his farm under normal conditions. If taken into account, this additional tobacco would of course raise plaintiff's market quota of pounds per acre which can be produced. Plaintiff also felt that the committee should have taken into account his production in the year 1964.

The defendant review committee determined that the acreage-poundage quota for plaintiff's farm was established by the county committee in accordance with the regulations and denied plaintiff's appeal. Plaintiff then instituted this action, originally in the Circuit Court for Pittsylvania County and removed to this court, to obtain judicial review of the review committee's determination.

■ This court's power to review the action of the committee below is limited by statute and, as is the case with virtually all appeals taken from administrative determinations, is confined to questions of law. The findings of fact by the review committee, if supported by evidence, are conclusive. 7 U.S.C. § 1366 (1938). See Crolley v. Tatton, 249 F.2d 908 (5th Cir. 1957).

The method for obtaining the farm marketing quota for flue-cured tobacco is set out in 7 C.F.R. § 724.68, 30 F.R. 6147 (1965), and is a fairly simple one. The first step is the determination of a "preliminary farm yield" which approximates the average yield per acre for the farm for a five year period. The number of pounds of flue-cured tobacco produced each year for the period of 1959 through 1963 is divided by the total acreage of tobacco harvested from the farm for each year respectively. Having obtained the yield per acre for each of these five years, the three highest years

are selected and a simple average of these three years is taken. The "farm yield" is next ascertained by multiplying the preliminary farm yield by the national yield factor of .9349. Then the farm marketing quota is simply the farm yield times the acreage allotment.

At the hearing before the review committee plaintiff did not contend that the formula for fixing his marketing quota had been incorrectly applied; rather he argued that the formula as set up by the Secretary of Agriculture was unfair in that it should have taken into account tobacco which was "grown" but not harvested as a result of destruction by hail. As mentioned before, he also thought that his increased production for the year 1964 should have been considered.

In this court, plaintiff has placed great emphasis on that portion of section 724.-68 in which the number of pounds of tobacco produced in each year of the period is divided by the number of acres *harvested*, claiming that by reason of hail damage prior to harvest, the number of acres of tobacco actually harvested was diminished. In addition, he asserts for the first time on appeal that the delay in giving him his final notice of the farm marketing quota constitutes a deprivation of his property without due process of law.

Plaintiff's chief contention in this court is that hail losses reduced the number of acres harvested, and so the acreage allotment should be adjusted accordingly. In the court's mind, to say a farmer has not harvested an acre is to say that he has taken *no* crops from that acre, and not merely that the *yield* of the acre was diminished. The fact that by reason of wind, hail, rain, or some other damaging agent he is able to obtain *less* than he would have had he harvested a week earlier does not change the fact that he has harvested that acre of land by taking off the crop, however diminished it might be. However, it will be noted that Mr. Simpson claimed a 100% loss by hail for thirteen acres for the year 1961, and in the determination of the Re-view Committee under the heading "Findings of Fact" it is stated that 1961 was one of the years used to determine the preliminary farm yield. It is not clear from the report whether the committee counted the acres which were 100% destroyed as "acres harvested" within the meaning of the regulations, and further clarification by the review committee is needed on this point.

Plaintiff has also raised what purports to be a constitutional question with respect to the delay experienced in receiving the final quota notice. Although in the absence of statutory authorization, an administrative agency does not have the power to determine the constitutionality of the statute it administers, Panitz v. District of Columbia, 72 App.D.C. 131, 112 F.2d 39 (1940), plaintiff is not challenging the statute itself, and it is believed that whatever evidence of injury to his rights he might have had should in the first instance have been presented to the review committee to aid it in its overall determination. The theory is that if all the pertinent evidence is presented, the committee might decide the matter in plaintiff's favor, thus leaving no remnant of the constitutional issue. Such presentation before the committee is clearly required by Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947), and by language in Public Utilities Comm. v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). This is merely a phase of the well established doctrine that before he may resort to the courts, a complainant must exhaust his administrative remedies.

Note that the review committee is still not authorized to make a constitutional determination, but it will take the facts upon which plaintiff bases his constitutional claim and see if the statute or regulations, particularly 7 C.F.R. § 724.68 (f) (1965), affords him relief on those facts without resort to constitutional principles.

402

■ This case will be remanded to the review committee for the following purposes:

(1) So that the committee may determine whether it counted the 13 acres which Mr. Simpson claims were 100% destroyed by hail in 1961 as "acres harvested," thus increasing the number of acres by which the total number of pounds produced was divided and lowering the yield in pounds per acre;

(2) So that the plaintiff may present any evidence which he might have with respect to injuries suffered as a result of not receiving his final quota notice until June 25, 1965, giving the review committee the opportunity to rule on whether the statute or regulations afford plaintiff relief to present.

(3) Any other material facts which plaintiff may wish to submit to the committee in support of his claim.

The committee will re-consider plaintiff's claim and make decision thereon.

The case will be stricken from the docket with the right reserved to reinstate it upon notice and without payment of additional costs at a future date.