ALLEGHENY AIRLINES, INC., American Airlines, Inc., Braniff Airways, Inc., Eastern Air Lines, Inc., Lake Central Airlines, Inc., Mohawk Airlines, Inc., National Airlines, Inc., North Central Airlines, Inc., Northeast Airlines, Inc., Northwest Airlines, Inc., Trans World Airlines, Inc. and United Air Lines, Inc., Plaintiffs,

v.

George H. FOWLER, Bernard Katzen, Ruperto Ruiz, Francis Giaccone, Lloyd Hurst, Bessie A. Buchanan and J. Edward Conway, members of the New York State Commission for Human Rights, Defendants.

No. 66 Civ. 1365.

United States District Court
S. D. New York.

Dec. 15, 1966.

**510**

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for plaintiffs. Jesse Freidin, Herbert Prashker, Peyton H. Moss, New York City, of counsel.

Henry Spitz, New York City, for defendants, Alan J. Saks, Brooklyn, N. Y., Solomon J. Heifetz, Henry Spitz, New York City, of counsel.

Cohen & Weiss, New York City, for Air Line Pilots Association, International, amicus curiae. Henry Weiss, Herbert A. Levy, New York City, of counsel.

O'Donnell & Schwartz, New York City, for Transport Workers Union of America, AFL-CIO, amicus curiae. Asher W. Schwartz, S. William Barr, New York City, of counsel.

## OPINION

FREDERICK VAN PELT BRYAN, District Judge.

In this action the twelve Airline plaintiffs seek judgment against defendant members of the New York State Commission for Human Rights, pursuant to 23 U.S.C. § 2201, declaring that the Commission is without jurisdiction to apply the age discrimination provisions of Article 15 of the New York Law Against Discrimination, Executive Law, McKinney's Consol.Laws, c. 18, § 290 et seq., to plaintiffs' stewardesses engaged in flights in interstate and foreign air transportation. Federal question jurisdiction is asserted under 28 U.S.C. §§ 1331(a) and 1337.

Defendant Commissioners have moved to dismiss the complaint for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted. Rule 12(b) (1), (6), F.R.Civ.P. A motion by plaintiffs for leave to serve a supplemental complaint alleging events which had transpired subsequent to the commencement of the action, pursuant to Rule 15(d), F.R. Civ.P., came on for hearing at the same time. Plaintiffs' motion was granted and defendants' motion to dismiss was considered as addressed to the supplemental complaint.

Since the defendants have submitted an affidavit in support of their motion to dismiss which goes into relevant facts concerning the administrative proceedings under attack in somewhat more detail than the allegations of the supplemental complaint, defendants' motion will be treated as one for summary judgment under Rule 56. See Rule 12(b), F.R.Civ.P.

### I.

*Facts*

The allegations of the supplemental complaint, containing three separately-stated claims for relief, with such additional factual details as are supplied by the moving affidavit, are in substance as follows:

Plaintiff Mohawk is a New York corporation. Each of the other plaintiffs is a foreign corporation qualified to do business in New York. All are currently operating as common carriers by air engaged in interstate air transportation pursuant to certificates of convenience and necessity issued by the Civil Aeronautics Board and subject to the provisions of the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301–1542, and the regulations issued thereunder. 14 C.F.R. chs. I and II. Eight are also certified to operate as scheduled air carriers in foreign transportation under the Act and the Regulations. All are subject to the provisions of the Railway Labor Act with

respect to collective bargaining with their employees.

Under the authority of 14 C.F.R. §§ 121.391 and 121.393 plaintiffs are required to employ flight attendants or stewardesses to provide for the comfort, safety and convenience of their passengers on air craft operated pursuant to their certificates. Each has determined, in accordance with the needs and conditions of its service, the functions, duties and necessary qualifications and training of its flight stewardesses. Each has also determined that such functions are best performed "by employees having the personal and personality characteristics of youthful, attractive women," and that youth is an occupational qualification for flight stewardesses in interstate and foreign air transportation.

Every one of the plaintiffs therefore has established a maximum hiring age between 25 and 27 for initial stewardess employment; six of them have established maximum age limits ranging from 32 to 35 for continuance of service in that capacity. Most stewardesses, however, resign within two or three years after they are hired.

Each of the plaintiffs provides airline service to points within the State of New York from points outside the State, and to points outside the State from points within. Consequently every plaintiff employs stewardesses who perform services within the State. These stewardesses are assigned to particular bases from which their trips regularly originate and return. Six of the plaintiffs have stewardess bases in New York and other bases outside of the State. The remaining plaintiffs maintain bases only outside of New York from which their stewardesses enter the State to perform service in interstate or foreign flights.

Stewardesses are not hired for assignment to particular bases, but are assigned to such bases within the respective systems as may be appropriate. None are hired for assignment only to bases within New York or are employed to perform services only in New York. All are hired to perform services in interstate or foreign air transportation in accordance with the needs of the particular service.

Most stewardesses are initially hired outside of New York and the majority of those assigned to New York bases perform most of their services outside New York. Transfer and assignment is governed by the collective bargaining agreements negotiated by each plaintiff with the union certified as exclusive bargaining representative under the Railway Labor Act.

As to each plaintiff the union so certified represents all of the stewardesses on a systemwide basis without regard to where they are based or where their services are rendered. Age requirements for stewardesses are uniform throughout each system. Assignments to bases inside or outside of New York are frequently shifted as the needs of service are required.

Age qualifications have been the subject of negotiation with the respective stewardesses' unions and the practices adopted by the airlines, according to the allegations of the complaint, are "consistent with the various agreements" between the plaintiffs and the respective certified unions. American and TWA currently have systemwide agreements with their stewardesses' representative, Local 550 of the Transport Workers Union, which contemplate the reassignment of stewardesses to other employment at the ages of 32 and 35 respectively.

There are laws against age discrimination in employment in twenty states serviced by plaintiffs, with a range of different protected ages. The New York Law Against Discrimination (Article 15 of the Executive Law) has two provisions dealing with age discrimination in employment. Section 296(1) (a) generally bars discrimination "because of the age * * * of any individual." [1] Section

---

1. The statute reads as follows: "(1) It shall be an unlawful discriminatory practice:

(a) For an employer, because of the age, race, creed, color, national origin or

296(3–a) (a) provides that it is an unlawful practice for an employer to refuse to hire, to discharge or to discriminate in any terms of employment "because an individual is between the ages of forty and sixty-five." [2] Neither provision has been construed by the New York courts.

Article 15 created the State Commission Against Discrimination (now the State Commission for Human Rights) and vested it with broad powers to prevent, combat and eliminate the various discriminatory practices specified, including age discrimination. The Commission may pass upon complaints [3] and also institute investigations on its own motion.[4] A full panoply of enforcement procedures is provided.[5]

Complaint procedure under the Act is spelled out in § 297. There are essentially five stages in the processing of a complaint: (1) upon the filing of a verified complaint, the chairman designates a single commissioner to conduct an investigation and determine whether "there is probable cause to credit the allegations of the complaint;" (2) if probable cause is found, the investigating commissioner may then seek to eliminate the discriminatory practice by "conference, conciliation and persuasion;" (3) if the issues are not so resolved, the investigating commissioner may proceed to require the respondent to "answer the charges of such complaint" at a full, formal hearing before three members of the Commission, not including the original investigating commissioner; (4) if, upon the evidence at the hearing, the commission finds that a respondent has engaged in any unlawful discriminatory practices, the Commission shall state its findings and issue a cease and desist order containing appropriate conditions; if no violation is found the complaint must be dismissed; (5) in the event of continued non-compliance the Commission may apply to the Supreme Court for an order directing enforcement.[6] Any person aggrieved may obtain judicial review of orders of the Commission. Wilful violation of a Commission order is a misdemeanor but obviously seeking judicial review is not such wilful conduct.[7]

Apparently the criminal provisions of the statute have never been invoked. In the twenty-one years since the statute was passed, the Commission has always proceeded by judicial enforcement of its orders.

On December 17, 1964, the Commission on its own motion, pursuant to § 295(6) (b) of the Executive Law, commenced an investigation of the airline industry with respect to maximum age requirements for initial and continued employment as a stewardess. The announced purpose of the investigation was to determine "whether a bona fide occupational qualification properly applies to a stewardess position of either particular airlines or the airlines generally under the age provisions of the New York Law Against Discrimination." Defendant Conway was designated investigating commissioner.

Twenty airlines flying into New York, the Air Transport Association and the two major stewardess unions were subsequently invited by Commissioner Conway to participate in an "informational hearing" on December 7, 1965 and to

---

sex of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

2. The entire provision reads as follows:
 "3–a It shall be an unlawful discriminatory practice:
 (a) For an employer or licensing agency, because an individual is between the ages of forty and sixty-five, to refuse to hire or employ or license or to bar or to terminate from employment such individual, or to discriminate against such individual in promotion, compensation or in terms, conditions or privileges of employment."

3. § 295(6) (a).

4. § 295(6) (b).

5. § 295(7).

6. § 298.

7. § 299.

present evidence on the matters under investigation. At the hearing counsel representing several of the airlines and the Air Transport Association raised objections to the jurisdiction of the Commissioner to conduct any investigation on the grounds (1) that application of the New York law amounted to an unconstitutional burden on interstate commerce; (2) that it constituted an attempt to regulate a field preempted by the Railway Labor Act; and (3) that the investigation was not authorized by Article 15 since it did not involve persons between the ages of 40 and 65 who were the only persons covered by the Act. ·

Commissioner Conway apparently took the position that the objections to jurisdiction could not be considered at such an early stage since the hearing was not part of an enforcement proceeding and those invited were under no compulsion to attend or participate. After considerable discussion of adjournment to permit the airlines to seek relief in the courts and the rejection by them of a suggestion that they suspend removal of stewardesses from flight for overage during such adjournments, Commissioner Conway proceeded to take the testimony of the stewardess representatives. The airlines declined to present any evidence or to participate in the hearings pending a judicial challenge on the jurisdictional question.

On March 23, 1966, when suit had not yet been commenced, Commissioner Conway issued a "Report of Findings after Investigation" which concluded generally that age was not a bona fide occupational qualification for continued employment as a stewardess.[8]

The report did not pass upon or deal with the jurisdictional objections of the airlines. No evidence in support of the airlines' position with regard to age qualifications was submitted to or considered by the Commissioner in making his report.

In addition to the investigation upon its own motion the Commission has en-

tertained four complaints by stewardesses alleging discrimination because of age, two against American and two against TWA. Subsequent to Commissioner Conway's report of March 23, 1966, the two investigating Commissioners assigned to conduct the first stage of these complaint proceedings made findings of probable cause to credit the allegations of the complainants that American and TWA had violated their rights under the New York Law Against Discrimination by dismissing them as stewardesses on the ground that they had reached the age of 33 and 35 respectively.

Conciliation conferences with both American and TWA followed during which the respective investigating Commissioners requested immediate discontinuance of the age policies of the two airlines and restoration of the complainants to their positions with full back pay and without loss of seniority. As to American it was further requested that the airline state that any collective bargaining agreements effectuating its age policies were pro tanto ineffective in New York. American in turn asked that conciliation be deferred pending resolution of its jurisdictional objections.

Subsequently the complaint proceedings against American and TWA passed to the third administrative stage when the respective investigating Commissioners made a "direction for Issuance of Notice of Hearing" on the complaints. The issuance of these directions is the last procedural step prior to the holding of public hearings on the merits of the complaints before a full panel of three other Commissioners.

Up to now the jurisdictional objections raised by the airlines have not been presented to or passed upon by the panel of Commissioners before whom regulatory proceedings are to be conducted, nor have any of the individual Commissioners conducting preliminary investigations ruled upon them. The instant action presents these objections to juris-

---

8. The report noted that "a separate report will be made as to age ceilings for initial hire." No such report has yet been made.

diction to this court and seeks a judgment pursuant to 28 U.S.C. § 2201 declaring that the Commission is wholly without jurisdiction to apply the age discrimination provisions of Article 15 to plaintiffs' stewardesses engaged in interstate or foreign air transportation in any respect. The prayer for relief also asks that "upon appropriate motion" a preliminary injunction be issued holding all proceedings of any nature before the Commission with respect to plaintiff stewardesses in abeyance "pending the determination of this action and the declaration of rights thereunder." No such motion has been made and no permanent injunctive relief is requested in the complaint.

Plaintiffs further allege that irreparable damage will result from a continuation by the Commission of the acts complained of, including involvement in a multiplicity of administrative and civil proceedings at great expense, threats of civil and criminal penalties, disruption of negotiations and arrangements with the stewardesses' union under the Railway Labor Act, injury to their good will and public reputation and interference with normal operation of their airlines.

## II.

### The positions of the parties

The airlines contend here, as they have throughout the proceedings, that the Commission is wholly without jurisdiction to take steps of any nature regarding their stewardesses because (1) the provisions of Article 15 of the Executive Law which prohibit age discrimination in employment constitute an unconstitutional burden on interstate commerce as applied to stewardesses engaged in interstate and foreign air transportation; (2) the actions of the Commission with respect to stewardesses are an unconstitutional attempt to regulate a field preempted by the Railway Labor Act and the Federal Aviation Act; (3) Article 15 does not prohibit age discrimination in employment against persons who are under 40 and therefore as a matter of

New York law the Commission is without power to take any action with respect to stewardesses who are under that age. In addition, it is said that Article 15 insofar as it may be deemed to apply to persons under 40, is void for vagueness under the 14th Amendment and the New York State Constitution.

The defendants' motion to dismiss does not go to the merits of these contentions. They urge dismissal because (1) plaintiffs have failed to exhaust administrative remedies available to them; (2) the issues posed are not ripe for judicial review at this interlocutory stage; and (3) a federal court should abstain from proceeding and dismiss the action because the New York courts have not yet had an opportunity to pass upon the issues raised.

Plaintiffs, on the other hand, insist that the acts of the Commission thus far and threatened constitute a wholly unlawful usurpation of authority which is causing them irreparable damage for which they have no other adequate remedy, that no further administrative proceedings should be required, and that the controversy is ripe for determination by this court. They suggest, however, that any questions of New York law as to the purport, scope and effect of the provisions of Article 15 relating to age discrimination in employment be promptly submitted to the New York courts for determination and that this court abstain from determining the federal and constitutional questions involved pending such determination by the New York courts.

## III.

### The Three-Judge Court Question

A threshold question here, which has not been raised or even adverted to by the parties, is whether under 28 U.S.C. §§ 2281 and 2284 this motion to dismiss the supplemental complaint must be heard by a three-judge court rather than by a single district judge. While the jurisdictional allegations of the supplemental complaint specifically refer to §§ 2281 and 2284, neither the defendant Com-

missioners nor the plaintiffs have applied for the designation of a three-judge court; both parties apparently are content that the present motion be heard and determined by me sitting as a single district judge. However, since the requirements of §§ 2281 and 2284 are mandatory, this does not necessarily dispose of the question.

Section 2281 provides:

"An *interlocutory or permanent injunction* restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title." (emphasis added.)

The initial question thus presented is whether the complaint seeks an "interlocutory or permanent injunction," a demand which is a prerequisite to the convocation of a three-judge court.

The complaint on its face certainly requests no injunctive relief at this stage. Rather it simply seeks a judgment under 28 U.S.C. § 2201 declaring the respective rights and obligations of the parties with respect to the jurisdiction of the Commission over the subject matter of plaintiffs' flight stewardesses engaged in interstate and foreign air transportation. Nowhere in the complaint is there a demand for any permanent injunctive relief.

It is true that there is an additional prayer that "upon appropriate motion" a preliminary injunction be issued restraining the defendants from enforcing Article 15 against plaintiffs pending the determination of this action. But though this action had been pending for more than four months at the time this motion to dismiss was argued, no motion for a preliminary injunction has been made by plaintiffs nor has an attempt been made to restrain the Commission from taking any action whatsoever.

Thus, in its present posture this lawsuit stands as one for a declaratory judgment without a request for injunctive relief. Indeed, as pointed out earlier, plaintiffs concede that a key question of State law as to the application of the statute under attack remains undecided by the State courts. Plaintiffs themselves suggest that this court abstain from deciding the other issues raised by defendants' motion until such questions are disposed of by the New York courts.

Given these facts and circumstances then, it is necessary to determine whether a three-judge court is required to hear and determine the instant motion under what Judge Friendly has called the "deceptively simple" provisions of §§ 2281 and 2284. Sardino v. Federal Reserve Bank, 361 F.2d 106, 114 (2 Cir. 1966). In the present posture of this case I conclude that it is unnecessary for a court of three judges to pass on this motion.

In the first place, this action does not seek an "interlocutory or permanent injunction." Though an action for a simple declaration of invalidity, as we have here, might under some circumstances conceivably require the convocation of a three-judge court, see Sardino v. Federal Reserve Bank, supra at 116 n. 12, this is not such a case. For plaintiffs do not seek a broad declaration of invalidity of Article 15 of the New York Executive Law or an across-the-board interdiction of the operation of the statute. What they are asking for is merely a declaration that the jurisdiction of the Commission does not extend to the unique interstate aspects of the airline industry of which they are a part.

The Supreme Court has held under similar circumstances (despite some suggestion to the contrary in Federal Housing Administration v. The Darlington, Inc., 358 U.S. 84, 87, 79 S.Ct. 141, 3 L.Ed. 2d 132 (1958)) that three judges were

unnecessary in an action for declaratory relief raising a constitutional question, because the original request for an injunction had in effect been abandoned before trial.[9] Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed. 2d 644 (1963). The observations of the court in *Mendoza* are particularly apposite here:

"The present action, which in form was for declaratory relief and which in its agreed substance did not contemplate injunctive relief, involves none of the dangers to which Congress was addressing itself [in prescribing the prerequisites for convening a three-judge court]. The relief sought and the order entered affected an Act of Congress in a totally noncoercive fashion. There was no interdiction of the operation at large of the statute." 372 U.S. at 155, 83 S.Ct. at 560.

See Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); Cities Service Oil Co. v. McLaughlin, 189 F.Supp. 227, 229 (D.D.C. 1960). See also Public Service Comm. of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

Here, too, the airlines seek no "interdiction of the operation at large" of Article 15. This suit by no means threatens an "improvident state-wide doom by a federal court of a state's legislative policy" against age discrimination. Phillips v. United States, 312 U.S. 246, 250–251, 61 S.Ct. 480, 85 L.Ed. 800 (1941). This is emphasized by the nature of the instant motion based on the premise that if plaintiffs are required to exhaust state remedies no constitutional questions may remain for determination by this court. Plaintiffs' own claim that the important state law questions should be adjudicated in the state courts before this court passes on any issues of constitutionality further demonstrates that this action does not present a wholesale attack upon a state's legislative policy.

The suit in its present posture closely resembles Chicago, Duluth & Georgian Bay Transit Co. v. Nims, 252 F.2d 317 (6 Cir. 1958), cited with approval in Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715 n. 3, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962) (per curiam). *Nims* held that the convening of a three-judge court was there unnecessary because the constitutional issues would be presented only in the event that it were first determined that the state statute was applicable to plaintiff's business operations. "Necessarily the demand for Constitutional relief which could be afforded only by a three judge court was conditioned upon a prior finding that the Company's operations were subject to the tax under the terms of the statute itself." 252 F.2d at 319. The instant case is in the same posture.

■ Moreover, as indicated in Idlewild Bon Voyage Liquor Corp. v. Epstein, supra, 370 U.S. at 715, 82 S.Ct. at 1296, even when an application for a statutory three-judge court has actually been addressed to the district court, a single judge should inquire "whether the complaint at least formally alleges a basis for equitable relief." The present motion necessarily raises that question. For defendants' motion cannot be granted unless the supplemental complaint be found wanting in equity due to insufficient allegations of any threatened or probable act of the defendants which might cause the irreparable injury essential to the invocation of equitable relief by injunction.

■ Finally, even had a three-judge court been requested, the single judge to whom the application is made must determine whether the federal questions raised are substantial. See generally D. Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L. Rev. 11, 20–29 (1964). As will appear from the later discussion, the constitutional questions raised here do not appear

9. The case arose under 28 U.S.C. § 2282, which requires a three-judge court when injunctive relief is sought on the ground

of unconstitutionality of federal legislation.

to be substantial at this early stage of the administrative proceedings.

Absent any request for a three-judge court, there is plainly no obstacle to my passing upon the motion to dismiss in my sole capacity as a district judge.

## IV.

### *Exhaustion*

 There is, of course, a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Consequently, as a general rule "before the courts can be called upon, the preliminary sifting process provided by the statutes must be gone through." United States v. Sing Tuck, 194 U.S. 161, 170, 24 S.Ct. 621, 624, 48 L.Ed. 917 (1906).

In support of its contention that the airlines have failed to exhaust available administrative remedies, defendants urge that there has been no showing here of a palpably defective exercise of jurisdiction by the Commission which would inflict irreparable injury upon the airlines. The standard—proposed by defendants and acceptable to plaintiffs—for evaluating the propriety of invoking the exhaustion principle is essentially identical with Professor Davis' formulation, see 3 Davis, Administrative Law § 20.03, at 69 (1958), which declares that

"[t]he key factors are three: extent of injury from pursuit of administrative remedy, degree of apparent clarity or doubt about administra-

tive jurisdiction, and involvement of specialized administrative understanding in the question of jurisdiction." See Lone Star Cement Corp. v. Federal Trade Commission, 339 F.2d 505 (9 Cir. 1964); United States v. Rockland Steamship Corp., 218 F.Supp. 509 (S.D.N.Y. 1963) (Feinberg, J.).[10]

Plaintiff airlines do not quarrel directly with the proposition that judicial interference with agency proceedings, apart from the normal channels of review, constitutes an unusual—and in most instances an undesirable—exercise of power. Rather they contend that the customary exhaustion requirements are inapplicable where administrative authority is challenged on substantial constitutional grounds. The issue thus posed is whether the constitutional attack upon the application of the age provisions of the New York Anti-Discrimination Law to stewardesses in plaintiffs' employ justifies interfering with the state administrative process at this early stage.

 At the outset it is clear that many cases have applied the exhaustion requirements in circumstances not dissimilar to those presented here. Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); Federal Power Comm'n v. Arkansas Power & Light Co., 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261 (1947) (per curiam), reversing 81 U.S.App.D.C. 178, 156 F.2d 821 (1946); Petroleum Exploration, Inc. v. Public Service Comm'n, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294 (1938); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); Gorham Mfg. Co. v. State Tax Comm'n, 266 U.S. 265,

10. Professor Davis' test does not differ materially from the formulation I recently adopted to evaluate the legality of attacks in the district court upon interlocutory orders of a federal agency. M. G. Davis & Co. v. Cohen, 256 F.Supp. 128 (S.D.N.Y.), aff'd, 369 F.2d 360 (2 Cir. 1966), and Sperry & Hutchinson Co. v. Federal Trade Comm'n, 256 F.Supp. 136 (S.D.N.Y.1966). The standard there set forth was "whether the Commission has stepped plainly beyond the bounds of its statutory authority, or has acted in clear defiance of [plaintiff's] constitutional rights to its irreparable damage." 256 F.Supp. at 141–142; 256 F.Supp. at 131. See also Consolidated Edison Co. of New York v. McLeod, 302 F.2d 354 (2 Cir. 1962).

45 S.Ct. 80, 69 L.Ed. 279 (1924); Dalton Adding Machine Co. v. State Corp. Comm'n, 236 U.S. 699, 35 S.Ct. 480, 59 L.Ed. 797 (1915); Miller v. United States, 242 F.2d 392 (6 Cir.), cert. den., 355 U.S. 833, 78 S.Ct. 48, 2 L.Ed.2d 44 (1957); see Allen v. Grand Central Aircraft Co., 347 U.S. 535, 553 and n. 22, 74 S.Ct. 745, 98 L.Ed. 933 (1954); cf. Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908). Understandably, as this line of authority suggests, despite the presence of constitutional issues there is a manifest reluctance on the part of federal courts to authorize a premature invalidation of agency proceedings, particularly if the tribunal involved is engaged in enforcing a central feature of a state's regulatory policy. This tendency is strengthened where, as here, the alleged constitutional deficiency is not readily apparent upon the face of the statute. The obvious reason for this is that "the administrative remedy plainly should be pursued" if "an administrative proceeding might leave no remnant of the constitutional question." Public Utilities Comm'n of State of Cal. v. United States, 355 U.S. 534, 539–540, 78 S.Ct. 446, 450, 2 L.Ed.2d 470 (1958); see Allen v. Grand Central Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954).

On the other hand, it is no doubt true that upon occasion the courts have resolved constitutional objections to administrative proceedings without requiring submission of the issue to the agency in the first instance. Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960); City of Chicago v. Atchison, Topeka & Santa Fe Ry., 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); Public Utilities Comm'n of State of Cal. v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); Hillsborough Tp., Somerset County v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946); Public Utilities Comm'n of Ohio v. United Fuel Gas Co., 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943); Skinner & Eddy Corp. v. United States, 249 U.S. 557, 39 S.Ct. 375, 63 L.Ed. 772 (1919); General Elec. Co. v. Callahan, 294 F.2d 60 (1 Cir. 1961); Fay v. Douds, 172 F.2d 720 (2 Cir. 1949); Panitz v. District of Columbia, 72 App.D.C. 131, 112 F.2d 39 (1940); Linde Air Prods. Co. v. Johnson, 77 F.Supp. 656 (D. Minn. 1948) (per curiam); see Jaffe, The Exhaustion of Administrative Remedies, 12 Buffalo L. Rev. 327, 340 (1963). Most administrative tribunals, like the New York Commission for Human Rights, have no authority to pass upon the constitutionality of the legislation they administer, as distinguished from specific applications of an otherwise valid law. Compare Panitz v. District of Columbia, 72 App.D.C. 131, 112 F.2d 39 (1940) with 3 Davis, Administrative Law § 20.04, at 116 (1958). As a practical matter, therefore, if in a court proceeding the constitutional issues are sharply drawn and inevitably dispositive, as where the law in question is unconstitutional on its face, it makes no sense to compel a party initially to submit his claims to an agency which is not empowered to resolve them. Thus "where the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right." Public Utilities Comm'n of State of Cal. v. United States, 355 U.S. 534, 540, 78 S.Ct. 446, 450, 2 L.Ed.2d 470 (1958).

However, the cases relied upon by the airlines do not speak to the present problem. This is not a case where immediate judicial intervention is "the only effective way of protecting the asserted constitutional right." Here exhaustion should be required because the "administrative proceeding might leave no remnant of the constitutional question." 355 U.S. at 539, 78 S.Ct. at 450. Thus the reservation, rather than the judgment in

*Public Utilities Comm'n,* is controlling in the present case.

First, there is considerable doubt whether the airlines will ultimately be subjected to the provisions of the Executive Law at all. Despite the preliminary findings of probable cause (made without the submission of evidence by the airlines), the Commission may well decide after a hearing that age is a bona fide occupational qualification for stewardesses. Compare Application of Local 373, United Association of Journeymen, 40 Misc.2d 440, 243 N.Y.S.2d 61 (Sup. Ct.1963). The Commission may conclude that it cannot proceed because the age provisions of the New York law are inapplicable to persons uuder 40. Even according to plaintiffs, this eventuality is not unlikely.

Similarly, the Commission could decide that under the present circumstances the Executive Law was not intended to apply to employers such as airlines which are engaged in interstate commerce. 3 Davis, Administrative Law § 20.04, at 116 (1958). A decision on any one of these grounds, of course, would obviate any constitutional issues. Beard v. Stahr, 370 U.S. 41, 82 S.Ct. 1105, 8 L.Ed.2d 321 (1962) (per curiam); Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947). Thus "requiring exhaustion of administrative remedies [here] would vindicate the fundamental doctrine that courts should avoid passing on unnecessary constitutional questions." Sohm v. Fowler, 365 F.2d 915, 918 (D.C. Cir. 1966).

The present action is therefore distinguishable from such cases as Public Utilities Comm'n of State of Cal. v. United States, supra, and City of Chicago v. Atchison, Topeka & Santa Fe Ry., 357 U.S. 77, 84, 78 S.Ct. 1063, 1067, 2 L.Ed.2d 1174 (1958), because there is an "ambiguity in the section which calls for interpretation by the state courts." The administrative remedy in this case is neither non-existent nor useless. Contrast Florida Lime & Avocado Growers, Inc. v. Jacobsen, supra; Hillsborough Tp. v.

Cromwell, supra; General Elec. Co. v. Callahan, supra; Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948). Therefore a full and fair ventilation of the questions raised here may best be achieved by compelling adherence to the normal channels of review spelled out in the Executive Law.

As yet, plaintiff airlines have not even taken advantage of the opportunity to adduce proof in support of their objections before the state authorities. In fact, none of the New York proceedings have yet advanced to the stage of a formal hearing. If the constitutional claims raised by the airlines are well-founded, the Commission is fully competent to correct the situation:

"This would be particularly true in the typical case, such as the instant one, where the state [authorities] are asked to construe a state statute against the backdrop of a federal constitutional challenge. The litigant denying the statute's applicability may be led not merely to state his federal constitutional claim but to argue it, for if he can persuade the state [authorities] that application of the statute to him would offend the Federal Constitution, he will ordinarily have persuaded [them] that the statute should not be construed as applicable to him. In addition, the parties cannot prevent the state [authorities] from rendering a decision on the federal question if [they choose] to do so; and even if such a decision is not explicit, a holding that the statute is applicable may arguably imply, in view of the constitutional objections to such a construction, that the court considers the constitutional challenge to be without merit." England v. Louisiana State Board, 375 U.S. 411, 420–421, 84 S.Ct. 461, 467, 11 L.Ed.2d 440 (1964).

Under the circumstances I cannot assume that the New York authorities will apply Article 15 in an unconstitutional manner. This is particularly true in this case because the evidence in support

of the constitutional claims has not been made available to the state officials.

 In addition, there has been no showing here of a palpably unconstitutional exercise of authority threatening plaintiffs with irreparable injury.[11] The allegations of the complaint are sorely deficient in this respect. Compare M. G. Davis & Co., Inc. v. Cohen, 369 F.2d 360 (2 Cir. 1966). The expense and inconvenience of submitting to the administrative proceedings—which is the only significant injury averred in the complaint—is not that type of irreparable harm against which equity protects. "Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 51–52, 58 S.Ct. 459, 464, 82 L.Ed. 638; see Petroleum Exploration, Inc. v. Public Service Comm'n, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294 (1938).

Moreover, most of the cases in which constitutional objections were passed upon despite the pendency of administrative proceedings involved patent excesses of authority which could not be corrected by application to the agency. City of Chicago v. Atchison, Topeka & Santa Fe Ry., supra; Public Utilities Comm'n of State of Cal. v. United States, supra; Public Utilities Comm'n of Ohio v. United Fuel Gas Co., supra; General Elec. Co. v. Callahan, supra; Linde Air Prods. Co. v. Johnson, supra. No such flagrant constitutional violations are evident here. This is not surprising since the proceedings before the Commission have not advanced beyond the investigatory stage. Therefore at present the commerce clause and preemption claims are at least doubtful. See Colorado Anti-Discrimination Comm'n v. Continental Air Lines, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963); Walker Mfg. Co. v. Industrial Comm'n, 27 Wis.2d 669, 135 N.W.2d

307 (1965); Delaney v. Conway, 39 Misc.2d 499, 241 N.Y.S.2d 384 (Sup.Ct. 1963); Atchison, Topeka & Santa Fe Ry. v. Fair Employment Practice Comm'n, 44 Lab.Cas. ¶ 50452 (Cal.Super. Ct.1962). Similarly, at first blush the void-for-vagueness due process allegation appears to be a makeweight.

Finally, contrary to the contentions of plaintiffs, apart from the merits of the constitutional arguments they involve "facts requiring an administrative hearing for determination before the jurisdictional issue can be met." [12] In particular, the resolution of the commerce clause question would involve a detailed factual inquiry into the nature and extent of the burden which the state regulation, whatever that may be, imposes upon the airlines. Southern Pacific Co. v. State of Arizona, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945); See Head v. New Mexico Board of Examiners, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963); Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959). The impact upon each plaintiff may not be identical. The facts bearing upon these questions should be adduced before the Commission. When, and if, an order of enforcement is ultimately sought the constitutional claims can be considered in light of the full administrative record.

 Under similar circumstances in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), the Supreme Court held that a claim that administrative procedures could not constitutionally be applied provided no excuse for circumventing normal agency procedures. In the present case, as well, I conclude that plaintiff airlines have failed to establish a case for departing from the ordinary channels of review. The action must be dismissed for failure to exhaust administrative remedies.

---

11. See note 10, supra.

12. Brief for Plaintiffs, p. 37. The presence of factual issues also distinguishes

this case from Public Utilities Comm'n of Ohio v. United Fuel Gas Co., 317 U.S. 456, 467, 63 S.Ct. 369, 87 L.Ed. 396 (1943).

## V.

### *Ripeness*

In view of my disposition of the exhaustion question, an extensive discussion of ripeness is unnecessary. But since the two issues are to an extent related it would be a misleading and improper bifurcation to treat them as separate and distinct questions.

There is no doubt that the constitutional issues raised here are considerably less concrete than they would be if they survived an administrative hearing. As in Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 244, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952), the "complainant[s] in this case [do] not request an adjudication that [they have] a right to do, or to have, anything in particular. [They do] not ask a judgment that the Commission is without power to enter any specific order or take any concrete regulatory step." Indeed, it is not clear that the New York authorities will ultimately attempt to regulate interstate commerce at all. If they do, the extent of the anticipated regulation is unpredictable. They may or may not seek to apply the age provisions to all stewardesses entering New York. Perhaps the laws will be invoked only in favor of those stewardesses based in New York. Moreover, the constitutional dimension of the questions involved may vary with respect to the maximum age limits, employed by only six plaintiffs, and the age ceilings for initial hire, employed by all the plaintiffs. Compare Toomer v. Witsell, 334 U.S. 385, 391, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948). The Commission may draw a distinction in applying New York law to the maximum and minimum provisions. It may dispose of the complaint proceedings, presently pending against TWA and American, somewhat differently than the general industry-wide proceedings.

In short, the actual constitutional questions in this case—if any there be—are uncertain and abstract. This is not the easy case where the statute under attack is plainly unconstitutional on its face.

See, e. g., Public Utilities Comm'n of State of Cal. v. United States, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958); City of Chicago v. Atchison, Topeka & Santa Fe Ry., 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958). It would thus not be tenable for this court to declare ex cathedra that under no circumstances could New York apply the age provisions of the Executive Law to interstate airlines. In doubtful cases constitutional litigation is not conducted in such a fashion.

Nor can I assume that the New York authorities, both administrative and judicial, will neglect their constitutional obligations. Federal rights can be fully protected in the ordinary course of the administrative proceedings. As was said in Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 247, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952):

"Declaratory proceedings in the federal courts against state officials must be decided with regard for the implications of our federal system. State administrative bodies have the initial right to reduce the general policies of state regulatory statutes into concrete orders and the primary right to take evidence and make findings of fact. It is the state courts which have the first and the last word as to the meaning of state statutes and whether a particular order is within the legislative terms of reference so as to make it the action of the State. We have disapproved anticipatory declarations as to state regulatory statutes, even where the case originated in and was entertained by courts of the State affected * * *. Anticipatory judgment by a federal court to frustrate action by a state agency is even less tolerable to our federalism."

See, e. g., International Longshoremen's, etc., Union v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954); Public Utilities Comm'n of State of Cal. v. United Air Lines, Inc., 346 U.S. 402, 74 S.Ct. 151, 98 L.Ed. 140 (1953) (per curiam), reversing 109 F.Supp. 13 (N.D.

Cal.1952); Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948); Bonanza Air Lines, Inc. v. Public Service Comm'n, 186 F.Supp. 674 (D.Nev. 1960). Without undertaking an extended discussion of the many cases dealing with the ripeness question, see generally 3 Davis, Administrative Law §§ 21.01–.03 (1958), I am satisfied that the issues raised here are so abstract and hypothetical as to preclude judicial relief at this stage. This is particularly so when the broader question of ripeness is viewed in light of the specific shortcomings in the position of plaintiff airlines with respect to exhaustion.

### VI.

#### Abstention

Plaintiffs themselves concede that this court should abstain from deciding any of the constitutional issues they seek to pose here pending determination by the New York State Courts of questions of state law as to the applicability of the New York statute. But they take the position that this court should retain jurisdiction of the present action until the state courts have determined such questions.

Defendants, on the other hand, maintain that the necessity for such abstention furnishes an additional ground for dismissal.

In view of my conclusion that the motion to dismiss should be granted on the grounds already discussed, abstention as a ground for dismissal need not be dealt with at any length. Suffice it to say that at present there is considerable uncertainty as to the circumstances in which a federal court should dismiss an action on the ground of abstention, as distinguished from retaining jurisdiction while the parties repair to a state tribunal to obtain a preliminary ruling on state law questions. See England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 423, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (Douglas, J., concurring); A.L.I., Study of the Division of Jurisdiction Between State and Federal Courts 67–80 (Tent. Draft No. 3,

1965). However, it is true that the present action closely resembles "the bulk of the abstention cases" before the Supreme Court where "the unsettled issue of state law principally concerned the applicability of the challenged statute to a certain person or a defined course of conduct, whose resolution in a particular manner would eliminate the constitutional issue and terminate the litigation." Baggett v. Bullitt, 377 U.S. 360, 376–377, 84 S.Ct. 1316, 1325, 12 L.Ed.2d 377 (1964).

 In addition, this suit threatens an unwarranted disruption of a state administrative process, which in similar circumstances justified dismissal in Alabama Public Serv. Comm'n v. Southern Ry., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) and Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). For these reasons I conclude that the abstention rule furnishes an additional ground for dismissal of the action.

The motion to dismiss for want of subject matter jurisdiction is granted. See Devany v. United States, 366 F.2d 807 (2d Cir. 1966); M. G. Davis & Co., Inc. v. Cohen, 369 F.2d 360 (2 Cir. 1966).

It is so ordered.