**GENERAL ELECTRIC COMPANY,**
Plaintiff, Appellant,

v.

John A. CALLAHAN, Commissioner of Labor and Industries of the Commonwealth of Massachusetts, et al., Defendants, Appellees.

No. 5775.

United States Court of Appeals Fifth Circuit.
Aug. 24, 1961.

Lawrence S. Fordham, Boston, Mass., with whom Lewis H. Weinstein, Loyd M. Starrett, Boston, Mass., Roland C. Radice, Lynn, Mass., and Foley, Hoag & Eliot, Boston, Mass., were on brief, for appellant.

Joseph T. Doyle, Asst. Atty. Gen., with whom Edward J. McCormack, Jr., Atty. Gen., and Theodore R. Stanley, Legal Assistant to the Attorney General, Boston, Mass., were on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

The appellant, General Electric Company, is a New York corporation engaged in the business of manufacturing a great variety of electrical machines and devices. There can be no doubt whatever that it is engaged in "commerce" as defined in § 2(6) of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 152 (6) and is therefore subject to the jurisdiction of the National Labor Relations Board. It has manufacturing plants in several Massachusetts communities, including Lynn, West Lynn and Medford, where it employs approximately 620 draftsmen, apprentices, designers, detailers and tracers. For years Local 142, American Federation of Technical Engineers, AFL–CIO, has been the Board certified representative of these employees for the purposes of collective bargaining.

On August 10, 1960, representatives of the appellant, G. E. hereinafter, and the Union commenced negotiations for a new collective bargaining agreement to follow one due to expire on October 1, 1960. Negotiations dragging on unsuccessfully, the parties, on November 10, 1960, entered into a "Memorandum of Agreement Concerning Strike Truce" effective as of that date which re-established substantially all of the terms and conditions of the expired contract and terminated a strike of some six weeks duration.

By letter dated November 22, 1960, the Governor of Massachusetts requested the Board of Conciliation and Arbitration in the Department of Labor and Industries of the Commonwealth of Massachusetts, for brevity the State Board hereinafter, to "investigate and report upon the controversy" between the Union and G. E. in accordance with the provisions of Massachusetts General Laws Chapter 150 § 3 quoted in material part in the margin.[1] This letter followed by six days a letter of November 16, 1960, from the attorneys for the Union asking the State Board to "make inquiry into the cause of the controversy" between G. E. and the Union, "to hear all persons interested in the controversy who may come before it" to "advise" the parties "what ought to be done or submitted to by either or both to adjust" the controversy and "make a written decision thereof; and in the performance of the foregoing functions to take such action as is required under G.L. Ch. 150, Sections 5 and 6" also quoted in material part in the margin.[2]

[1] " * * * When the board has knowledge that a strike or lockout, which involves an employer and his present or former employees, is seriously threatened or has actually occurred, the board shall, as soon as may be, communicate with such employer and employees and endeavor by mediation to obtain an amicable settlement, or endeavor to persuade them to submit the controversy to a local board of conciliation and arbitration established under section nine [providing for organization of an arbitration panel] or to the board. If a settlement is not agreed upon and the parties refuse to submit the matter in dispute to arbitration, the board shall investigate the cause of such controversy and ascertain which of the parties thereto is mainly responsible or blameworthy for the existence or continuance of the same, and shall, unless a settlement of the controversy is reached, make and publish a report finding such cause and assigning such responsibility or blame. The board, subject to the approval of the commissioner of labor and industries, may employ agents to assist in said investigation. It shall, upon the request of the governor, investigate and report upon a controversy if in his opinion it seriously affects or threatens seriously to affect the public welfare. The board shall have the same powers for the foregoing purpose as are given to it by sections five to eight, inclusive. * * *"

[2] § 5. "If a controversy exists between an employer and his employees, the board shall, upon application as provided in the following section, as soon as practicable visit the place where the controversy exists and make careful inquiry into its cause * * *. The board shall hear all persons interested who come before it, advise the respective parties what ought to be done or submitted to by either or both to adjust said controversy, and make a written decision thereof which shall at once be made public, shall be open to public inspection and shall be recorded by the board. A short state-

The State Board responded to these letters by scheduling a hearing for December 2, 1960, postponed at the appellant's request to December 13 and subsequently again postponed, for the purpose of investigating the controversy between G. E. and the Union and taking the action thereon required of it by statute. It gave notice thereof to the Union and G. E.

In the meantime, on December 9, Counsel for G. E. had filed a verified complaint in the court below against the Commissioner of Labor of the Commonwealth of Massachusetts and the three members of the State Board, all of whom are naturally citizens of Massachusetts, asking for temporary and permanent injunctions against any action under the sections of the Massachusetts statute quoted above on the ground that the State Board was without jurisdiction for the reason that Congress had "pre-empted the field" of labor disputes in industries affecting "commerce" as defined in the federal legislation on the subject. Federal jurisdiction was alleged to rest upon diversity of citizenship and an adequate amount in controversy and it was also asserted that the action arose under Article VI, Clause 2 of the Constitution of the United States (the so-called Supremacy Clause), and the Fourteenth Amendment.[3] Jurisdiction in equity was rested on the assertion that the plaintiff was threatened with irreparable injury and had no adequate remedy at law.

The plaintiff's application for a temporary injunction came on for hearing before the court below on December 12 at which time, without taking any evidence, the court gave an opinion from the bench concluding with the announcement: "The relief prayed for is denied," supplemented after colloquy with counsel for the appellant by the statement: "The Complaint is dismissed." Later on the same day the court below endorsed on the complaint: "Denied for lack of Equity Jurisdiction."

On the same day, December 12, the State Board issued summonses to representatives of G. E. directing them to appear before it on December 15 to give evidence of what they knew about the controversy. At that hearing counsel for G. E., appearing specially for the G. E. officials summoned to appear, petitioned the State Board to quash the summonses for lack of jurisdiction and supported their contention with a brief and oral argument. The State Board immediately denied the petition and G. E. on the same day appealed to this court from the action taken on December 12 by the court below.[4] Subsequently counsel for

ment thereof may, in the discretion of the board, be published in the annual report, and the board shall cause a copy thereof to be filed with the clerk of the city or town in which said business is carried on. Said decision shall for six months be binding upon the parties who joined in said application, unless by agreement of both parties it is stipulated in the application that the contract is to run for a longer period of time, in which event the decision of the board will be binding for the length of time agreed upon by both parties in their application."

§ 6. "* * * The application shall contain a concise statement of the existing controversy and a promise to continue in business or at work without any lockout or strike until the decision of the board, if made within three weeks after the date of filing the application. The board shall forthwith, after such filing, cause public notice to be given of the time and place for a hearing on the application, unless both parties join in the application and present therewith a written request that no public notice be given. * * *"

3. The allegations of the complaint are sufficient to show federal jurisdiction under either § 1331(a) or § 1332(a) (1) of Title 28 U.S.C., and perhaps also under § 1337, see American Federation of Labor v. Watson, 1946, 327 U.S. 582, 591, 66 S.Ct. 761, 90 L.Ed. 873.

4. We assume that the District Court dismissed the plaintiff's complaint and therefore entered a "final decision" appealable to this court under Title 28 U.S.C. § 1291. But even if all the court below did was to deny G.E.'s application for temporary injunctive relief its order is appealable under Title 28 U.S.C. § 1292(a) (1).

G. E. again unsuccessfully argued the same jurisdictional point before the State Board. But before the State Board took any further action this court entered an order granting the appellant relief pending appeal.

The basis for the District Court's action is not altogether clear from its extemporaneous opinion. It seems to have rested its conclusion in part upon Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, and in part upon the assertion that a court of equity "must not act to enjoin" an administrative agency "from conducting hearings and making findings, embarrassing as they may be, merely because such agency is acting without any warrant of law and contrary to the Constitution," which it immediately elaborated with the statement: "Those who engage in such conduct in a quasi-official or official capacity run such risk as there may be of private action against them if it be found that what they have done is tortious, and malicious, and undertaken with a full awareness that they are without power, and with the mere purpose of creating political or other embarrassment."

██ Myers v. Bethlehem Shipbuilding Corp., supra, is not in point. The Court in that case held that the district courts lacked jurisdiction to enjoin the National Labor Relations Board from conducting hearings on charges of unfair labor practices for the reason that Congress had vested "exclusive" power to prevent unfair labor practices in the Board subject to judicial review only by the United States Courts of Appeals and on certiorari by the Supreme Court of the United States. The case is not in point on the question of adequate legal remedy, for no federal court has power to review actions of the State Board and it is established doctrine that the adequacy of relief available to G. E. at law is to be measured by the character of the relief which may be had in the federal courts. American Federation of Labor v. Watson, 1946, 327 U.S. 582, 594, 66 S.Ct. 761, 90 L.Ed. 873; Di Giovanni v. Camden Fire Insurance Ass'n, 1935, 296 U.S. 64, 69, 56 S.Ct. 1, 80 L.Ed. 47. And a suit in equity will lie where the remedy at law is not clear or as adequate and complete as that which equity can afford, Terrace v. Thompson, 1923, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255.

Nor is Myers v. Bethlehem Shipbuilding Corp. authority for application of the rule of judicial abstention pending exhaustion of administrative remedies. The basic question for decision being one of federal law, as will be developed hereinafter, that is, a question of the interpretation of federal statutes and decisions, it is one that the State Board was not established and is not qualified to decide and can hardly be expected to entertain. Cf. Public Utilities Commission of State of California v. United States, 1958, 355 U.S. 534, 539, 540, 78 S.Ct. 446, 2 L.Ed.2d 470.

Neither do we see any merit in the suggestion that G. E. has an adequate remedy at law in a civil action sounding in tort, presumably in the federal courts, against members of the State Board. Such actions would lie at common law, as the court below indicated, only if G. E. could prove that the member or members of the State Board had not acted in good faith or maliciously or for some improper purpose. And in the absence of such conduct, G. E. probably would not have an action against the members of the State Board under Title 42 U.S.C.A. § 1983 even if it could be proved that State Board action had deprived it of some federally guaranteed right, privilege or immunity. Cf. Francis v. Lyman, 1 Cir., 1954, 216 F.2d 583, 586–588, and cases cited therein at page 587; Nelson v. Knox, 6 Cir., 1958, 256 F.2d 312; Hoffman v. Halden, 9 Cir., 1959, 268 F.2d 280, 298–300.

██ We are satisfied that G. E. has no adequate remedy at law. And for reasons which will presently appear, we are also satisfied that G. E., or perhaps the Union, since the State Board wields a two-edged sword, will suffer irreparable injury if the steps initiated by the State

Board pursuant to its duties under Chapter 150 are allowed to proceed to completion.

We turn now to the appellee's challenge to the jurisdiction of this court on the ground that G. E.'s application for injunctive relief should have been submitted to and heard by a statutory three-judge court composed in accordance with Title 28 U.S.C. § 2284 from which appeals lie not to this court but only to the Supreme Court of the United States under Title 28 U.S.C. § 1253.

■ Clearly under Title 28 U.S.C. § 2281, quoted in the margin,[5] a single judge may not entertain applications for temporary or permanent injunctions in suits to restrain state officials, boards or commissions grounded on the unconstitutionality of the state statute under which the official, board or commission proposes to act. But surely the district judge before whom a complaint is presented must decide in the first instance whether it is one that requires the convening of a three-judge court. And if he errs in ruling that it does not then certainly appeal lies to the appropriate court of appeals. Cf. Jacobs v. Tawes, 4 Cir., 1957, 250 F.2d 611, 614; Carrigan v. Sunland-Tujunga Telephone Co., 9 Cir., 1959, 263 F.2d 568, certiorari denied 359 U.S. 957, 79 S.Ct. 893, 3 L.Ed.2d 841. In the exercise of our appellate jurisdiction we conclude that the court below was quite correct in proceeding as it did instead of invoking the procedures for convening a three-judge district court.

It is true that one basis for federal jurisdiction asserted in the complaint is that the cause of action alleged arises under the Fourteenth Amendment. But we regard this assertion as surplusage, for the complaint also alleges that the cause of action arises under the Supremacy Clause and it is evident from reading the complaint in its entirety that the claim is not that the Massachusetts statute establishing the State Board and defining its functions violates any provision of the Constitution of the United States, but that the provisions of the Massachusetts statute cannot be invoked with respect to the controversy between G. E. and the Union because federal legislation has pre-empted the field of collective bargaining in industries engaged in "commerce" as defined in federal legislation.

Clearly valid federal legislation prevails over conflicting state statutes by force of the Supremacy Clause of the federal Constitution. In a sense, therefore, a provision of the federal Constitution is involved in declaring state action under a local statute invalid on the ground that the state statute authorizing the action conflicts with a federal act. But a long line of cases hold that the mere fact that the "declaration of the supremacy clause gives superiority to valid federal acts over conflicting state statutes" does not constitute a sufficient basis for holding that cases involving a conflict between state and federal legislation present a question of the "unconstitutionality" of the state statute within the meaning and for the purposes of Title 28 U.S.C. § 2281. Ex Parte Bransford, 1940, 310 U.S. 354, 358–359, 60 S.Ct. 947, 84 L.Ed. 1249, and cases cited. For further discussion and citation of cases see Penagaricano v. Allen Corp., 1 Cir., 1959, 267 F.2d 550, 554–556; Bell v. Waterfront Commission, 2 Cir., 1960, 279 F.2d 853, 858–859. The question is whether federal legislation has "pre-empted the field" which the State Board acting under the Massachu-

5. § 2281. "Injunction against enforcement of State Statute; three-judge court required

  "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

setts statute proposes to enter. The answer depends upon the construction of federal legislation and this, of course, is a function of the federal courts. And it is a function the federal courts must perform even though state action is involved.

The Court in a somewhat different but nevertheless analogous context clearly stated the general principle applicable to the situation presented in the case at bar in Capital Service, Inc., v. N. L. R. B., 1954, 347 U.S. 501, 504, 74 S.Ct. 699, 702, 98 L.Ed. 887, in which, citing cases, the Court said:

> "Federal courts seek to avoid needless conflict with state agencies and withhold relief by way of injunction where state remedies are available and adequate. See Alabama Public Service Commission v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002. But where Congress, acting within its constitutional authority, has vested a federal agency with exclusive jurisdiction over a subject matter and the intrusion of a state would result in conflict of functions, the federal court may enjoin the state proceeding in order to preserve the federal right." (Citations omitted.)

The question is twofold. It is whether Congress has legislated comprehensively with respect to collective bargaining in industries affecting "commerce" as it has defined the word, and if it has, whether intrusion by the State Board acting pursuant to the Massachusetts statute into the field covered by federal legislation would result in an irreconcilable conflict with the specific terms or the general policy fairly attributable to the provisions of the federal legislation.

There can remain no doubt whatever that Congress has seen fit to regulate labor relations "to the full extent of its constitutional power under the Commerce Clause." Amalgamated Association etc. (Bus Employees) v. Wisconsin Employment Relations Board, 1951, 340 U.S. 383, 391, 71 S.Ct. 359, 363, 95 L. Ed. 364. Congressional occupation of the field has been recognized over and over again in a great many cases culminating in San Diego Building Trades Council v. Garman, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, which states and makes clear from the cases cited in footnote 1 on page 243 on page 778 of 79 S.Ct. and footnote 2 on page 244, on page 779 of 79 S.Ct. that all that is left to the states is power to regulate activities of "a merely peripheral concern of the Labor Management Relations Act" or conduct touching interests "deeply rooted in local feeling and responsibility," meaning by that we understand "conduct marked by violence and imminent threats to the public order," on page 247 of 359 U.S. on page 781 of 79 S.Ct. Since the state legislation involved in the case at bar is not confined to those areas, and there is no evidence of violence or threat to public order which state action might possibly be invoked to prevent, we turn to the question whether intrusion by the State Board into the labor controversy would result in a conflict of state and federal functions, for, as Mr. Justice Harlan pointed out in his concurring opinion in the San Diego Building Trades Council case, "conflict is the touchstone of pre-emption."

The underlying theory of federal legislation with respect to labor relations was stated by the Court in N. L. R. B. v. American National Ins. Co., 1952, 343 U.S. 395, 401–402, 72 S.Ct. 824, 828, 96 L.Ed. 1027, as follows:

> "The National Labor Relations Act is designed to promote industrial peace by encouraging the making of voluntary agreements governing relations between unions and employers. The Act does not compel any agreement whatsoever between employees and employers. Nor does the Act regulate the substantive terms governing wages, hours and working conditions which are incorporated in an agreement. The theory of the Act is that the making of voluntary labor agreements is encouraged by protecting employees' rights to organize for collective bargaining and

by imposing on labor and management the mutual obligation to bargain collectively."[6]

Subsequent amendments of the basic Act have wrought no change in this policy. N. L. R. B. v. Wooster Division of Borg-Warner Corp., 1958, 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823. See also Local 24 etc. (Teamsters Union) v. Oliver, 1959, 358 U.S. 283, 295–296, 79 S.Ct. 297, 3 L.Ed.2d 312.

█ That State Board action pursuant to the Massachusetts statute would conflict with the national policy of free and unfettered collective bargaining is clear. Although the State Board has limited direct coercive power (its decisions are binding for only six months, and then only upon the parties who joined in application to it), nevertheless the indirect coercive effect of its actions upon the parties to a labor dispute is by no means insubstantial. Mere participation in State Board hearings will surely have some tendency to solidify positions taken at the bargaining table thereby making it more difficult later to modify or abandon a stand taken on a bargaining issue in favor of an amicable settlement. Moreover, having held a hearing, the Board is not limited to editorial comment. Nor are its functions merely to mediate and conciliate. Its function after investigating a labor controversy is to render a written decision to be made public and be open to public inspection advising the parties as to what they should do to end the controversy and ascertain which of the parties is "mainly responsible or blameworthy" for its existence. The obvious statutory purpose is to coerce agreement by invoking official action to mold public opinion with respect to a labor dispute to the end of bringing the pressure of public opinion to bear to force a settlement. This is quite contrary to the national policy not to compel agreement but instead only to encourage volun-tary agreements freely arrived at after "good faith" bargaining between the parties. The conflict between state and federal policy is obvious.

Judgment will be entered vacating the order of the District Court and remanding the case to that court for further proceedings not inconsistent with this opinion.

6. See also Amalgamated Association etc. (Bus Employees) v. Wisconsin Employment Relations Board, supra, 340 U.S. at page 397, 71 S.Ct. 359; N. L. R. B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893.