DELAWARE COACH COMPANY, a corporation of the State of Delaware, Plaintiff,

v.

The PUBLIC SERVICE COMMISSION OF the STATE OF DELAWARE, and Vernon B. Derrickson, Nutter D. Marvel, Joseph C. Hutchinson, Jr., members thereof, Defendants.

Civ. A. No. 3314.

United States District Court
D. Delaware.

March 15, 1967.

Frank O'Donnell and Stanley C. Lowicki, O'Donnell, Hughes & Lowicki, Wilmington, Del., and Charles E. Thomas, Metzger, Hafer, Keefer, Thomas & Wood, Harrisburg, Pa., of counsel, for plaintiff.

Joseph T. Walsh, Wilmington, Del., for defendant, The Public Service Commission.

E. D. Griffenberg, Jr., Asst. County Atty., for defendant-intervenor, New Castle County.

Clifford B. Hearn, Jr., Asst. City Sol., for defendant-intervenor, City of Wilmington.

WRIGHT, Chief Judge.

This is an action for a preliminary injunction, brought by the Delaware Coach Company (Coach) against the Public Service Commission for the State of Delaware (Commission). The City of Wilmington (City) and New Castle County (County) have intervened as parties defendant. The Court has previously granted a temporary restraining order on the authority of United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), to preserve the status quo pending an exploration by the Court of its jurisdiction in the premises.

On November 16, 1966 the Amalgamated Transit Union, Division 842, struck Coach. Since the commencement of the strike more than 55 bargaining sessions have been held without any reconciliation. Throughout this period the City of Wilmington has been without

any mass transit facilities. On February 10, 1967 the City and the County moved the Commission for an order to show cause why Coach's certificate of public convenience and necessity should not be revoked. The order issued. Coach entered a limited appearance to challenge the jurisdiction of the Commission, this Court having refused injunctive relief because of the uncertainty that the Commission would take jurisdiction. The Commission denied Coach's motion to dismiss, and ordered that Coach answer the order to show cause.

Coach now seeks a preliminary injunction against the Commission on the theory that the National Labor Relations Act has preempted the field. Specifically, Coach argues that the Commissions's order to show cause is a thinly veiled threat that the company's certificate will be revoked absent capitulation to Union demands. Coach argues that this coercive threat violates the sanctity of collective bargaining which is the proper way to resolve labor disputes under the National Labor Relations Act. Oil, Chemical and Atomic Workers Intern. Union, Local 5–283 v. Arkansas Louisiana Gas Co., 332 F.2d 64 (10th Cir. 1964), General Electric Co. v. Callahan, 294 F.2d 60 (1st Cir. 1961), and Grand Rapids City Coach Lines v. Howlett, 137 F.Supp. 667 (W.D. Mich.1955). A brief analysis of each of these cases will be necessary to the discussion which follows.

The *Arkansas* case represented an attempt by a State Board to investigate a labor dispute and make recommendations and findings. The Tenth Circuit affirmed the lower court's granting of a permanent injunction.

"The law commands the parties to a labor dispute to bargain collectively, by meeting at 'reasonable times and confer in good faith * * *.' [citation omitted] But, they are not required to strike a bargain. Indeed, the whole spirit and tenor of the Labor Management Relations Act is to encourage collective bargaining—not

compel or coerce agreement." 332 F.2d at 66.

In the *General Electric* case the First Circuit was faced with an appeal by General Electric from the denial of a motion for a preliminary injunction. The State Labor Board had been requested by the Governor of Massachusetts to investigate a labor dispute in progress between General Electric and some of its employees. The State Board, by statute, had limited coercive power, but was empowered to make public its recommendations as to which side was "blameworthy". The Court thought even this potential publication was an interference with the right of collective bargaining guaranteed in the National Labor Relations Act.

"Although the State Board has limited direct coercive power * * * nevertheless the indirect coercive effect of its actions upon the parties to a labor dispute is by no means insubstantial. Mere participation in State Board hearings will surely have some tendency to solidify positions taken at the bargaining table thereby making it more difficult later to modify or abandon a stand taken on a bargaining issue in favor of an amicable settlement. Moreover * * * the Board is not limited to editorial comment. Nor are its functions merely to mediate and conciliate. Its function after investigating a labor controversy is to render a written decision to be made public and be open to public inspection advising the parties as to what they should do to end the controversy and ascertain which of the parties is 'mainly responsible or blameworthy' for its existence. The obvious statutory purpose is to coerce agreement by invoking official action to mold public opinion with respect to a labor dispute to the end of bringing the pressure of public opinion to bear to force a settlement. This is quite contrary to the national policy not to compel agreement but instead only to encourage voluntary agreements freely arrived at after 'good faith' bargaining between the parties." 294 F.2d at 67.

In *Grand Rapids* a bus company sought to enjoin the members of a statutory commission from holding hearings and making findings and recommendations on a labor dispute then in progress. The Court held the area was preempted by the National Labor Relations Act and enjoined the Commission from holding the proposed hearings.

> "The effect of public pressure resulting from the publication of the recommendations of the defendant fact-finding panel would compel the parties to settle their dispute on the basis recommended except as they might be in a position to resist public pressure which obviously the public utility cannot do. The plaintiff is entitled to negotiate an agreement with the Union after 'free and unfettered collective bargaining' * * *." 137 F.Supp. at 673.

These three cases all support the proposition that collective bargaining is a "right" guaranteed by the National Labor Relations Act to the parties to a labor dispute which affects interstate commerce. They further teach that the essence of collective bargaining is the absence of outside coercive pressures. In *General Electric,* for example, the state board had no power to arbitrate the strike unless both parties submitted the dispute to the board. Yet, the First Circuit held that the mere investigation and editorialization proposed by the state board would have a coercive effect on the collective bargaining process. If such investigation and publication can exert sufficient coercion to imperil the freedom of collective bargaining, then, *a fortiori,* action which threatens the very existence of a company must have a coercive effect and the above cited cases would seem to apply.

■ To suggest that the Commission has the right to examine the causes of a termination of transit service is one thing. It is quite another to suggest that the procedure for procuring the desired information may threaten Coach's very existence. Undeniably, the Commission should be kept informed of the progress of negotiations; similarly, the Commission should be told if collective bargaining ceases. But here, it is obvious that the petitioners before the Commission are seeking to force Coach and the Union to an agreement, by threatening the revocation of Coach's certificate. The mere possibility that the Commission might exercise its revocation power is like the proverbial sword of Damocles, poised and ready to terminate Coach's economic existence. Any contract negotiated under such circumstances might not be solely the product of collective bargaining, and might frustrate the federal statutory scheme.

■ Counsel for the Commission, the City and the County have argued that this Court should not assume that the Commission is aware of the labor dispute. This Court, their argument runs, should see the proposed proceedings as a routine inquiry into Coach's affairs to ascertain the reason for the absence of service. Any such argument is woefully naive. Of course the Commission knows of the existence of the labor dispute. Its knowledge is evidenced on the face of its opinion relative to its jurisdiction. And, of course, the Commission cannot pursue its proposed inquiry without interfering in the labor dispute.

Counsel for the Commission, the City and the County have urged the applicability of 28 U.S.C.A. § 2283 (1948). They have cited Amalgamated Clothing Workers of America v. Richman Brothers Co., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955), for the proposition that the federal district courts are powerless to enjoin state public service commissions which threaten to revoke certificates of public convenience and necessity in labor disputes.

Section 2283 provides:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Section 2283 has an unfathomable legislative history. It was originally enacted in 1793, most likely due to the then prevalent distrust of equity jurisdiction. The statute has descended virtually unchanged to the present day. By its terms it protects only a "state court" from the federal writ, but counsel herein have argued that the statute should apply to quasi-judicial proceedings as well. They bottom this contention upon the theory that the policy of § 2283 requires the same protection for quasi-judicial proceedings.

"The Act of 1793 expresses the desire of Congress to avoid friction between the federal government and the states resulting from the intrusion of federal authority into the orderly functioning of a state's judicial process." Toucey v. New York Life Ins. Co., 314 U.S. 118, 135, 62 S.Ct. 139, 145, 86 L.Ed. 100 (1941) (Frankfurter).

Accepting, *arguendo*, the defendant's argument that quasi-judicial proceedings are to be covered with § 2283's protective umbrella, the problem is to distinguish judicial from legislative or executive functions. In an earlier and simpler era of government the distinction would have been manifest. However, in our age of proliferating government appendages, formal functional differences become blurred. Institutions perform a multiplicity of functions, some judicial and some legislative or executive. The inquiry must center on the nature of the proposed proceedings, not the title of the institution in which they are being conducted.

■ Clearly, when the Public Service Commission undertakes to set rates for a public utility it is exercising a legislative function.

"Rate-fixing by the Commission is primarily a legislative function. The Commission does not act as a judicial or quasi-judicial tribunal. On the contrary, it acts as litigant, lawyer and judge in the initial determination of the matter before it. On appeal from its decision it appears before the reviewing court as a litigant in support of its own decision and, indeed, it initiated the present appeal." Application of Wilmington Suburban Water Corporation, 211 A.2d 602, 605 (Sup. Ct.Del.1965).

■ Conversely, when a public utility's determination that a consumer should be billed at a particular rate is challenged, the Commission is called upon to act as a judicial tribunal. This is because the question is whether the consumer meets one or another description set forth in the utility's schedule of tariffs on file with the Commission. Exact standards exist, and the problem is to determine the necessary facts about the particular consumer. This is a traditionally judicial effort.

"The legislature has clothed that administrative agency with judicial power to entertain proceedings and determine the facts upon which the existing laws shall operate in a controversy between consumers and the public service corporation." North v. City of Burlington—Electric Light Department, 214 A.2d 82, 84 (Sup.Ct.Vt. 1965).

■ The public utility is a curious hybrid in a market economy. The legislature grants the utility monopoly power to ensure the realization of the monopoly's economies of scale, but the legislature also imposes maximum rates to assure the public that it will not have to pay a monopoly price. The decision to grant monopoly power to a particular applicant, or the decision to withhold it, are to be made according to whether the applicant's proposed service is in "the public convenience and necessity." 26 Del. Code § 162 (1953). The term "public convenience and necessity" has long been recognized as a term of art, the application of which involves the exercise of administrative discretion. For this reason courts have invariably held, when confronted with the issue, that the granting or withholding of certification to a public utility is a legislative func-

tion. E. g., Aizen v. Pennsylvania Public Utility Commission, 163 Pa.Super. 305, 60 A.2d 443 (1948). By the same line of reasoning, the determination to recall existing certification must be legislative in character. If the legislature is to judge when conditions are proper for certification by the application of complex and technical standards, then, the legislature is the proper decision-maker when decertification is urged. The standards are just as technical and complex in one context as they are in another. And, if the standards are inappropriate for judicial application in one context, then they must be similarly inappropriate for judicial application in another context.

It is because of some unfortunate language in the cases that Public Service Commissions have been designated "quasi-judicial tribunals." E. g., Carroll v. Public Utilities Commission, 25 Conn. Sup. 459, 207 A.2d 278, 279 (1964).

In *Carroll* the Court did hold that the Commission was a quasi-judicial tribunal, but that holding was with regard to the appellant's due process rights to cross-examine witnesses in proceedings before the Commission. The distinction should be drawn between the fact-finding process, which is preliminary to the administrative decision, and the administrative determination itself.

In certain circumstances, such as the *Burlington* case, the Commission sits as an impartial body, deciding between two private litigants—the consumer and the utility. But on other occasions the tribunal is not impartial at all. It has the duty to protect and defend the public interest. As such the Commission is at once participant and umpire in the proceedings before it. Such is the case here. Although the proceedings before the Commission are styled City and County versus Coach, they are not to be confused with true adversary proceedings before an impartial disinterested judge. The mere fact that testimony will be elicited subject to time-honored procedural safeguards does not alter the fact that the ultimate determination is a legislative one. The Court is forced to the conclusion that § 2283 was not intended to apply to such proceedings.

But there is yet another consideration which argues against the applicability of § 2283. Even assuming that the Commission is a "state court", § 2283 contains three exceptions, the second of which permits a District Court to enjoin proceedings in a state court "in aid of its jurisdiction."

Capital Service, Inc. v. National Labor Relations Board, 347 U.S. 501, 74 S.Ct. 699, 98 L.Ed. 887 (1954), is the first case necessary to an understanding of the exception to § 2283. In *Capital* the employer secured an injunction against secondary picketing in the state court, and filed unfair labor practice charges with the NLRB. The NLRB concluded that the union had engaged in unfair labor practices and petitioned the district court for an injunction, but one of a more limited scope than the state court injunction. Simultaneously, the NLRB sought to enjoin enforcement of the state court injunction. The Supreme Court, in a forceful opinion, upheld the district court's granting of the injunction against the state court as "necessary in aid of its jurisdiction".

Amalgamated Clothing Workers of America v. Richman Brothers Co., 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955), cited by the defendants in this action, appears at first glance to be at odds with the *Capital* case in its holding that § 2283 proscribes injunctions against state courts merely because the National Labor Relations Act has preempted the area. The two cases are not in conflict. *Richman* involved a situation wherein the employer brought a state court action to have the picketing of its retail stores enjoined. The union, threatened with the state court injunction, brought an action in federal court seeking to enjoin the prosecution of the state action as an unfair labor practice. The district court held that it was powerless to grant the relief requested because of § 2283. The Supreme Court affirm-

ed. The Supreme Court, in affirming, rejected the argument that the injunction could be issued under the "necessary in aid of its jurisdiction" exception to § 2283. The Court reasoned:

"Under no circumstances has the District Court jurisdiction to enforce rights and duties which call for recognition by the Board. Such nonexistent jurisdiction therefore cannot be aided." 348 U.S. at 519, 75 S.Ct. at 457.

Thus, the rationale of *Richman* is that since the union's action charged the employer with an unfair labor practice— the bringing of the state suit—and since the NLRB has exclusive jurisdiction of unfair labor practice charges, the injunction sought would be in aid of the Board's jurisdiction and not in aid of the District Court's jurisdiction.

The present case is different. Here the complaint alleges the possible interference with collective bargaining which the Commission's inquiry poses. The parties to a labor dispute have a right, indeed a duty, to engage in collective bargaining, under the federal statutes. The protection of collective bargaining is not entrusted to the NLRB as is jurisdiction over unfair labor practice charges. Therefore, the federal courts have jurisdiction to protect the rights accorded the parties by federal statutes. 28 U.S.C.A. § 1337 (1948). Essential to the protection of the right to free and unfettered collective bargaining in this case is an injunction against further proceedings before the Delaware Public Service Commission. Therefore, the injunction sought is necessary in aid of the jurisdiction of this court, and the prohibition of § 2283 does not apply.

Since § 2283 does not apply, there is no technical barrier to the issuance of the relief prayed for. The rationale of the *Arkansas, General Electric* and *Grand Rapids* cases is controlling. The threatened interference with collective bargaining must be enjoined to preserve the integrity of the federal statutory scheme for the resolution of labor disputes. Informed citizens may well de-

cry this result which leaves municipalities at the mercy of industrial strife. But, that is a necessary consequence of a legislative enactment which contains provisions for a cooling-off period in the case of a national emergency but contains no similar remedy for a local emergency.

The motion for a preliminary injunction is granted. Let an appropriate order in conformity herewith be submitted.

The foregoing opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.