**HAWAII TRIBUNE–HERALD, LTD.,**
**Plaintiff,**

v.

**Shunichi KIMURA, Chairman, Board of**
**Supervisors, Hawaii County, Hawaii**
**et al., Defendants.**

**Civ. No. 2690.**

United States District Court
D. Hawaii.
July 5, 1967.

L. H. Silberman, Moore, Torkildson, Silberman & Schulze, Honolulu, Hawaii, for Hawaii Tribune-Herald, Ltd., plaintiff.

Yoshito Tanaka, County Atty., County of Hawaii, Hilo, Hawaii, for Shunichi Kimura and others, defendants.

Edward H. Nakamura, Bouslog & Symonds, Honolulu, Hawaii, for Typographical Union No. 37, Hawaii Newspaper Guild, Local 117, and Printing Pressmen's and Assistants' Union Local 413, applicants for Intervention.

## MEMORANDUM DECISION AND ORDER

PENCE, Chief Judge.

This is an action for a preliminary injunction arising out of a labor dispute. This decision is intended to supersede and augment the court's oral ruling in this matter, delivered in open court on June 28th, 1967.

### FACTS

On May 21, 1967, the plaintiff newspaper was struck by Honolulu Typographical Union No. 37, Hawaii Newspaper Guild, Local 117, and Printing Pressmen's and Assistants' Union Local 413. On or about June 7, 1967, defendant Shunichi Kimura, acting on behalf of The Hawaii County Board of Supervisors and Hawaii County, caused most of the legal advertising of the County of Hawaii to be withdrawn from the plaintiff's newspaper, assertedly following a State policy to remain neutral in any labor dispute by abstaining from doing business with a firm whose employees are currently on strike. Thereafter, the legal advertising of the County Government, except that of liquor commission notices, was withdrawn from the plaintiff's newspaper.

On June 21st this court signed an Order to Show Cause, brought by the plaintiff, requiring the defendants to show cause why they should not be enjoined or restrained from withdrawal of legal advertising from the plaintiff's newspaper. Plaintiff contended, in a complaint accompanying its order to show cause, that the defendants "have caused the County to illegally boycott the plaintiff and interfere in the free and unfettered collective bargaining between the plaintiff and its employees which is protected by the Government and Laws of the United States, and which, by virtue of the statutes and Constitution of the United States, is not subject to regulation, coercion, or interference by any state, subdivision or officer thereof * * *." Complaint page 3, paragraph 7. The defendants responded with a motion to dismiss the complaint under F.R. Civ.Pro. 12(b) (6).

The matter was briefed and argued to this court on June 28th. At that time the striking unions moved to intervene as parties defendant. The court chose, however, to treat arguments in support of their motion to intervene as arguments of amici curiae. Due to the disposition made of the defendant Kimura's motion to dismiss, the motion for intervention has become moot.

■ At the hearing on June 28th, for the purpose of determining whether the court had jurisdiction in this matter, the court, sua sponte, focused on two lines of inquiry: 1) whether the union had in any way threatened, coerced or restrained the County Supervisor or any of his agents to remove advertising from the plaintiff's newspaper, thus possibly constituting an unfair labor practice under 29 U.S.C. § 158(b) (4) (ii) (B), and 2) whether withdrawal of the county's advertising could have, upon any reasonable view of the possible proof to be offered, the effect of coercing or interfering with the free and unfettered collective bargaining between the struck newspaper and its employees, as alleged. As to the first inquiry the court called as its own witness Mr. Shunichi Kimura, whose testimony and exhibits submitted therewith satisfied the court that the union did not engage in any unfair labor practice and that the decision to withdraw advertising from the plaintiff's newspaper was independently conceived of and executed by the county chairman and his agents.

Aside from oral and written argument of counsel, the court heard no testimony nor did it receive any exhibits in relation to its second inquiry, except that a copy of a local newspaper, "The Big Island Shopper", published by the striking unions, was admitted into evidence and examined by the court.

## THE MOTION TO DISMISS

 The court is well aware of the dangers attendant upon the granting of a motion to dismiss. The rule is firmly established that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed. 2d 80 (1957). See also Dioguardi v. Durning, 139 F.2d 774 (2nd Cir. 1944); Rennie & Laughlin, Inc. v. Chrysler Corp., 242 F.2d 208, 213 (9th Cir. 1957).

The situation in case at bar was envisioned by Circuit Judge Sibley:

" * * * A petition may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made * * *." De Loach v. Crowley's Inc., 128 F.2d 378, 380 (5th Cir. 1942). Plaintiff's contention that defendants' withdrawal of advertising violates the sanctity of the collective bargaining process is without an adequate basis in law.

In Grand Rapids City Coach Lines v. Howlett, 137 F.Supp. 667 (W.D.Mich. 1955), a bus company brought suit against the members of a special commission appointed by the Governor pursuant to the Michigan Labor Mediation Act to enjoin the commission from holding hearings and making findings and recommendations on a labor dispute then in progress. The court held the area was pre-empted by The National Labor Relations Act and enjoined the commission from holding the hearings. Said the court:

"The effect of public pressure resulting from the publication of the recommendations of the defendant fact-finding panel would compel the parties to settle their dispute on the basis recommended except as they might be in a position to resist public pressure which obviously the public utility cannot do. The plaintiff is entitled to negotiate an agreement with the union after 'free and unfettered collective bargaining' * * *." 137 F.Supp. at 673.

The facts in General Electric Co. v. Callahan, 294 F.2d 60 (1st Cir. 1961), were similar. There the First Circuit agreed to reverse the denial of a motion for a preliminary injunction. The State Labor Board had been requested by the Governor of Massachusetts to investigate a labor dispute in progress between General Electric and some of its employees. The State Board, by statute, had limited coercive power, but was empowered to make public its recommendations as to which side was "blameworthy". The court held this potential publication was an interference with the right of collective bargaining guaranteed in the National Labor Relations Act.

"Although the State Board has limited direct coercive power * * * nevertheless the indirect coercive effect of its actions upon the parties to a labor dispute is by no means insubstantial. Mere participation in State Board hearings will surely have some tendency to solidify positions taken at the bargaining table thereby making it more difficult later to modify or abandon a stand taken on a bargaining issue in favor of an amicable settlement. Moreover * * * the Board is not limited to editorial comment. Nor are its functions merely to mediate and conciliate. Its function after investigating a labor controversy is to render a written decision to be made public and be open to public inspection advising the parties as to what they should do to end the controversy and ascertain which of the parties is 'mainly responsible or blameworthy' for its existence. The obvious statutory pur-

pose is to coerce agreement by invoking official action to mold public opinion with respect to a labor dispute to the end of bringing the pressure of public opinion to bear to force a settlement. This is quite contrary to the national policy not to compel agreement but instead only to encourage voluntary agreements freely arrived at after 'good faith' bargaining between the parties." 294 F.2d at 67.

Chief Judge Murrah, writing for the Tenth Circuit in Oil, Chemical and Atomic Workers International Union, Local 5–283 v. Arkansas Louisiana Gas Company, 332 F.2d 64 (10th Cir. 1964) followed the reasoning of the *Callahan* and *Grand Rapids* cases.

In *Oil, Chemical* there was an attempt by a State Board to investigate a labor dispute and make public recommendations and findings. In affirming the lower court's granting of a permanent injunction Chief Judge Murrah quoted from the *Callahan* case and added:

"The law commands the parties to a labor dispute to bargain collectively, by meeting at reasonable times and confer in good faith * * * (citation omitted). But, they are not required to strike a bargain. Indeed, the whole spirit and tenor of the Labor Management Relations Act is to encourage collective bargaining—not compel or coerce agreement." 332 F.2d at 66.

In Cab Operating Corp. v. City of New York, 243 F.Supp. 550 (S.D.N.Y.1965) Judge Bryan was faced with an action by taxicab companies to enjoin municipal authorities from counting ballots or publishing the results of a non-NLRB representation election held under the auspices of the City of New York. The question before the court was whether the activities of the City of New York with respect to the labor controversy, and particularly the election which its officers conducted, involved actual or potential conflict with the National Labor Relations Act or its administration. The court characterized the conduct of the municipality as " * * * a formal election sponsored and conducted by public officials under governmental aegis and expected to exert .the coercive pressure of public opinion upon non-consenting parties to a controversy * * *." 243 F.Supp. at 558.

" * * * The City election was apparently designed to marshal and exert the pressure of public opinion to achieve results which may be contrary to Board determination and which may prevent them from being carried out. It seems unnecessary to emphasize the abuses to which an election device of this nature may be subject in a strongly anti-labor or anti-management community." 243 F. Supp. at 558.

In granting plaintiffs the injunctive relief which they sought, Judge Bryan concluded that the activities of the Mayor and the Labor Commissioner clearly fell within the area pre-empted to the National Board. "The conflict between their activities, however well meant, and Federal labor policy and administration is obvious and inescapable." 243 F.Supp. at 559.

The most recent federal case to deal with the problem here considered is Delaware Coach Co. v. Public Service Commission of the State of Delaware, 265 F.Supp. 648 (D.Del.1967). There Chief Judge Wright issued a preliminary injunction in favor of a bus company and against a State Transportation Commission which had, in substance, threatened to revoke the bus company's certificate of public convenience and necessity unless the company capitulated to the union's demands. Relying on *Oil, Chemical, General Electric, Callahan* and *Grand Rapids*, the court ruled that "action which threatens the very existence of a company must have a coercive effect * * *" and that the aforementioned cases "teach that the essence of collective bargaining is the absence of outside coercive pressures." 265 F.Supp. at 651.

The case at bar involves a factual pattern radically different from the factual patterns in the cases discussed above. In each of those cases the state board or agents acted deliberately to bring pressure on the parties to reach a settlement. The method employed in each case contemplated 1) either an investigation, election, or threat; 2) formulation of findings or results; 3) publication of the findings or results with recommendations which had the ordinary and proximate effect of advising the public as to the culpability, cooperation or good faith of the primary parties involved in the labor dispute; and 4) an attempt by the state or municipality to coerce the bargaining parties to settle their disputes.

In the instant case there is nothing in the plaintiff's allegations to indicate that the municipality has not simply attempted to remain neutral and impartial in the labor dispute. There is no allegation that the county made an effort to interfere with the substantive issues which lie between the newspaper and the unions. Indeed, the counter-argument could be made that the county would be favoring the newspaper over the union by retaining its advertising in Tribune-Herald.

"While states and municipalities are not totally excluded from activities affecting interstate labor relations, see, e. g., San Diego Bldg. Trades Council, etc. v. Garmon, supra, 359 U.S. 236, at pp. 242–244, 79 S.Ct. 773, [3 L.Ed.2d 775] [(1959)]; International Union, United Automobile, etc., Workers v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030 (1958); United Auto., etc. Workers v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162 (1956); United Construction Workers, etc. v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025 (1954), preemption is invoked whenever there are 'the very real potentials of conflict' between federal and state regulation. La Crosse Telephone Corp. v. Wisconsin Employ-ment Relations Board, 336 U.S. 18, 26, 69 S.Ct. 379, 383, 93 L.Ed. 463 (1949). Such 'real potentials of conflict' exist when it is clear or may fairly be assumed that the activities which the state purports to regulate are prohibited or protected by the Act or interfere with or impinge upon rights granted thereby. When an activity is 'arguably subject' to the Act the states must defer to the Board's exclusive jurisdiction. San Diego Bldg. Trades Council, etc. v. Garmon, supra." 243 F. Supp. at 556.

This court holds as matter of law that in the present case no such "real potentials of conflict" are alleged. It is neither clear nor may it fairly be assumed that withdrawal of legal advertising by the county is prohibited or protected by the Act or interferes with or infringes upon rights granted thereby. Acting pursuant to state statute (See RLH 138–51, 1955, as amended 1963), the county chose voluntarily to place its advertising in other newspapers having general circulation within the county. Such conduct cannot, as a matter of law, be considered "regulation", see San Diego Bldg. Trades Council v. Garmon, supra; nor is there anything in plaintiff's allegation to indicate that the defendants' actions would or could have the effect of destroying plaintiff's business as in Delaware Coach, supra, or molding unfavorable public opinion against the plaintiff as was the situation in Grand Rapids, Oil, Chemical, Callahan, and Cab Operating Corp., supra. Rather, the county, like any other advertiser, unilaterally decided not to continue to give a struck employer its business. Certainly, nothing in the law required that the county patronize the Tribune-Herald in the first place. Refusal to continue what one is not required to do does not, in this context, give rise to a claim for relief. In short, it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that mere refusal to continue to patronize constitutes interference with or coercion of the collective bargaining process.

It is ordered that the plaintiff's motion for a preliminary injunction be and the same is hereby denied. The defendants' motion to dismiss the complaint pursuant to F.R.Civ.Pro. 12(b) (6) is granted.