**ALMACS, INC., Big "G" Discount Food Stores, Inc., First National Stores, Inc., Star Market Co., and Stop & Shop, Inc., Plaintiffs,**

**v.**

**Mary C. HACKETT, Director of the Department of Employment Security of the State of Rhode Island, Defendant,**

**and**

**Meatcutters and Food Store Workers Local Union 328, Amalgamated Meatcutters and Butcher Workmen of North America, Intervenor.**

**Civ. A. No. 4323.**

United States District Court,
D. Rhode Island.

May 11, 1970.

Guy J. Well and Matthew W. Goring, Providence, R. I., for plaintiffs.

W. Slater Allen, Asst. Atty. Gen., State of R. I., Charles H. McLaughlin, Providence, R. I., for Dept. of Employment Security.

William J. Sheehan, and Peter L. Kennedy, Providence, R. I., for intervenor Union.

## OPINION

PETTINE, District Judge.

This is a civil action pursuant to 28 U.S.C. § 1331 in which the plaintiffs, five corporations doing business in Rhode Island, seek injunctive relief against the defendant, who is the Director of the Rhode Island Department of Employment Security. By consent of the parties, the union which represents the employees of the plaintiff corporations has been permitted to intervene. The plaintiffs have moved to convene a three-judge court pursuant to 28 U.S.C. § 2281, and the defendant and intervening defendant have moved to dismiss, or in the alternative, to have the court abstain. The court received testimonial and affidavit evidence limited solely to the jurisdictional issues raised by the motions to dismiss. Hence, this opinion will treat the merits of the case, if at all, only in the light of the complaint read, as required, favorably to the plaintiffs in the spirit of the federal rules.

On April 11, 1970 separate agreements between plaintiffs and the intervening defendant terminated. On April 13, 1970 employees of the plaintiff Almacs struck Almacs. Also on April 13, 1970 employees of the other plaintiffs reported to work and were not provided work by those plaintiffs. Work has not yet resumed with respect to any of the five plaintiff corporations. Pursuant to the unemployment compensation law of the State of Rhode Island unemployed per-

sons otherwise eligible may, after a brief waiting period, receive unemployment compensation benefits. However, if such unemployed persons " * * * became unemployed because of a strike or other industrial controversy * * * " they are not entitled to benefits until the expiration of a six-week period in addition to the initial one-week waiting period. § 28–44–16, G.L.R.I.1956, as amended. Pursuant to this statutory provision, no benefits currently are being paid to Almacs employees. However, the defendant Director has determined to pay and is currently paying benefits to employees of the plaintiffs other than Almacs. The decision of the Director is currently being administratively appealed pursuant to Rhode Island statutory law to the Board of Review.

Plaintiffs claim that the statutory scheme of Rhode Island by which strikers and others involved in labor disputes may receive benefits violates the economic balance of power contemplated by the federal labor laws and ask that the operation of that statutory scheme in the context of this case be enjoined.

■■ The court turns first to plaintiffs' motion for the convening of a three-judge court. While the language of 28 U.S.C. § 2281 would seem to suggest on its face that a Supremacy Clause claim such as the instant one is suitable for a three-judge court, the decision of the Supreme Court in Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L. Ed.2d 194 (1965) [1] so construed § 2281 as to make it clear that claims of federal legislative supremacy are proper for single-judge consideration. See also General Electric Co. v. Callahan, 294 F.2d 60 (1st Cir. 1961) [2]; ITT v. Carter,

[1]. "That this procedure (a three-judge court) must be used in any suit for an injunction against state officials on the ground that a state enactment is unconstitutional has been clear from the start. What yet remains unclear, in spite of decisions by this and other courts, is the scope of the phrase 'upon the ground of the unconstitutionality of such statute' when the complaint alleges not the traditional Due Process Clause, Equal Protection Clause, Commerce Clause, or Contract Clause arguments, but rather that the state statute or regulation in question is pre-empted by or in conflict with some federal statute or regulation thereunder. Any such pre-emption or conflict claim is of course grounded in the Supremacy Clause · of the Constitution: if a state measure conflicts with a federal requirement, the state provision must give way. * * * The basic question involved in these cases, however, is never one of interpretation of the Federal Constitution but inevitably of comparing two statutes. Whether one district judge or three must carry out this function is the question at hand." Swift & Co. v. Wickham, supra, at page 120, 86 S.Ct. at p. 263. "The purpose of § 2281 to provide greater restraint and dignity at the district court level cannot well be thought generally applicable to cases that involve conflicts between state and federal statutes, in this instance determining whether the Department of Agriculture's regulations as applied to the labeling of * * * necessarily renders invalid a New York statute requiring a * * *." Swift & Co. v. Wickham, supra, at pages 127, 128, 86 S.Ct. at p. 267.

[2]. "Clearly valid federal legislation prevails over conflicting state statutes by force of the Supremacy Clause of the federal Constitution. In a sense, therefore, a provision of the federal Constitution is involved in declaring state action under a local statute invalid on the ground that the state statute authorizing the action conflicts with a federal act. But a long line of cases hold that the mere fact that the 'declaration of the supremacy clause gives superiority to valid federal acts over conflicting state statutes' does not constitute a sufficient basis for holding that cases involving a conflict between state and federal legislation present a question of the 'unconstitutionality' of the state statute within the meaning and for the purposes of Title 28 U.S.C. § 2281. Ex Parte Bransford, 1940, 310 U.S. 354, 358–359, 60 S.Ct. 947, 84 L. Ed. 1249, and cases cited. For further discussion and citation of cases see Penagaricano v. Allen Corp., 1 Cir., 1959, 267 F.2d 550, 554–556; Bell v. Waterfront Commission 2 Cir., 1960, 279 F.2d 853, 858–859. The question is whether federal legislation has 'pre-empted the field' which the State Board acting under the Massachusetts statute proposes to enter. The answer depends upon the con-

C.A. No. 3770 (D.R.I. April 10, 1967). Accordingly, the plaintiffs' motion is denied.

 The court next considers the argument of defendants that the jurisdictional amount is lacking and that the suit must therefore be dismissed. The law is clear that an allegation of amount in controversy must stand unless it can be shown to be absolutely impossible of satisfaction. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In the instant case, the complaint alleges an amount in controversy in excess of $10,-000 and the testimony presented by defendants through the Director does not contravene the possibility that each plaintiff may suffer $10,000 or more loss pursuant to statutory scheme. More importantly, in equity suits the value to be measured for jurisdictional purposes is the value of the right sought to be protected, here the right to bargain collectively free from state interference, a right which cannot as of this time clearly be valued at less than $10,000. In this respect the defendants' motions to dismiss are denied.

 The court next considers the argument of defendants that the anti-injunction provisions of the Norris-La-Guardia Act, 29 U.S.C. § 104(c), precludes the court from issuing the injunction here sought.[3] While that statute clearly prohibits federal injunctions against the payment of unemployment compensation benefits to persons involved in labor disputes, its prohibition extends only to "persons" as defined in the Act at 29 U.S.C. § 113. It is well-established that the United States cannot be a person within the meaning of the Act, United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91

L.Ed. 884 (1947), and by the same reasoning neither can a state or one of its agencies.

 The court next considers the question of whether it should stay its hand at this time. As to Almacs employees, no benefits will be paid until the expiration of the six-week period. As to employees of other plaintiffs, the Director has determined to pay benefits and the plaintiffs have appealed that decision to the Board of Review. In such circumstances it has been argued that the appropriate course is to await the state court's construction of its own statute, or the running of the six-week period, whichever comes sooner. However, the right sought to be protected in the instant case is the right *presently* to bargain free from not only the present payment of benefits but also from the influence upon the parties to collective bargaining that the knowledge of the availability of benefits may have. Cf. NLRB v. David Buttrick Co., 361 F.2d 300 (1st Cir. 1966). For this reason, even assuming that state courts were to construe the "industrial controversy" six-week disqualification to apply to the non-Almacs employees, there would still be a present controversy. Accordingly, the court decides not to refrain from deciding the substantive claim.

The court turns finally to the question of the legality of payment of unemployment compensation benefits to employees who are not presently working because of a labor dispute with their employers, and who come within the ambit of the National Labor Relations Act because their employers are engaged in sufficient interstate commerce.

 The Rhode Island unemployment compensation statute is part of a broad state-federal cooperative effort to pro-

---

struction of federal legislation and this, of course, is a function of the federal courts. And it is a function the federal courts must perform even though state action is involved." General Electric Company v. Callahan, *supra*, 294 F.2d at pages 65–66.

3. The defendants did not raise the applicability of 28 U.S.C. § 2283 to the instant case. See Delaware Coach Co. v. Public Service Comm., 265 F.Supp. 648 (D.Del. 1967). See generally Comment: Labor Law—Recent Decision on Jurisdictional Problems, 9 B.C.Ind. & Comm.L.Rev. 1059, 1071–77 (1968).

tect citizens against economic vicissitudes. It was enacted at a time when there was both strong national and local feeling for the redress of certain economic evils which could eventuate from the unregulated play of market forces. Its operation has been consistent and continuing from 1936 to the present. That the federal government has shared in this operation is apparent from a reading of state and federal statutory law. § 28–44–1 et seq., G.L.R.I.1956, as amended, 26 U.S.C. §§ 3301–3309, 29 U.S.C. §§ 49–49K. In particular the statute's statement of purpose, § 28–42–2 G.L.R.I.1956, as amended, makes clear the general welfare nature of the statute. It must, therefore, be concluded that it was neither the intent nor the primary purpose of the statute as a whole to impinge upon federally established collective bargaining rights.

 Plaintiffs argue, however, that the *effect* of the statute's provision for payment of benefits to persons involved in industrial controversy is to reallocate the balance of power contemplated by the National Labor Relations Act. However, it is certainly unclear from a reading of the federal law that Congress contemplated the overriding of any state general welfare laws. No such intent has been expressed and the various state laws both granting benefits and denying them have been operative throughout the entire history of the many changes in the federal laws. Moreover, the federal Congress has participated increasingly in the funding and operation of state welfare schemes. Against such a background the plaintiffs carry a heavy burden in seeking to persuade this court that there should be federal overriding of the policy determination of a state legislature either to grant or to deny benefits to striking employees.

Plaintiffs point to several cases in seeking to persuade this court. However, all of the cases, save John Hancock Mutual Life Ins. Co. v. Comm. of Ins., 349 Mass. 390, 208 N.E.2d 516 (1965), deal with state action which sought to impinge directly into the bargaining process. See General Elec. Co. v. Callahan, 294 F.2d 60 (1st Cir. 1961); Oil, Chem. & Atomic Wkrs. v. Arkansas Louisiana Gas Co., 332 F.2d 64 (6th Cir. 1964); Delaware Coach Co. v. Public Service Comm., 265 F.Supp. 648 (D.Del. 1967). None of those cases concerns a statutory scheme which is the product of a joint federal-state effort to redress the welfare problems of the citizenry. And *John Hancock*, in so far as it may be read to support plaintiffs' position, must be deemed incorrect.

> "The *Hancock* decision must rest upon the operational effect of the moratorium statute on 'free collective bargaining.' The anticipated effect is a 'dialectically plausible' frustration of the national labor policy. However, in finding a repugnance to that policy based on a speculative and potential effect on free collective bargaining, the *Hancock* court extends the reach of federal preemption under the NLRA. The thrust of the decision is to eliminate any area of 'peripheral concern' from state regulation where free collective bargaining may be affected."

Note, 7 B.C.Ind. & Comm.L.Rev. 377, at 380 (1966).

In San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) the Supreme Court made clear that interests "deeply rooted in local feeling and responsibility" would not be pre-empted without a showing of compelling federal interest. Additionally, the court clearly exempted any matter of "peripheral concern" to the federal laws from supplying the compelling federal interest. In the instant case the imposition upon collective bargaining power of the grant or denial of state benefits is speculative and limited. On the other hand, the concern of the state *for the well-being of its unemployed and* ultimately for the health of the local community is a most important interest "deeply rooted in local feeling and responsibility."

Nash v. Florida Ind. Comm., 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed. 2d 438 (1967)

is not to the contrary. There, the state denial of benefits clearly chilled the vital federal statutory provision regarding the necessity for private-party initiations of unfair labor practice charges. *Nash* does not extend to pre-emption of either the grant or the denial of unemployment compensation benefits to workers striking companies subject to the National Labor Relations Act. See Note: Pre-emption of State Labor Regulations Collaterally in Conflict with the National Labor Relations Act, 37 Geo.Wash. L.Rev. 132, 149–52 (1968).

For all these reasons, the defendants' motions to dismiss for failure to state a claim upon which relief may be granted are well taken. The complaint is dismissed. See ITT v. Carter, C.A. No. 3770 (D.R.I. April 10, 1967).